# SWAN LAND AND CATTLE COMPANY *v.* FRANK.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF ILLINOIS.

No. 150.   Argued March 21, 1893. — Decided April 10, 1893.

A party having a claim for unliquidated damages against a corporation which has not been dissolved, but has merely distributed its corporate funds amongst its stockholders and ceased or suspended business, cannot maintain a suit on the equity side of the United States Circuit Court

against a portion of such stockholders, to reach and subject the assets so received by them to the payment and satisfaction of his claim, without first reducing such claim to judgment, and without making the corporation a defendant and bringing it before the court.

Corporations are indispensable parties to a bill which affects corporate rights or liabilities.

A claim purely legal, involving a trial at law before a jury, cannot, until reduced to judgment at law, be made the basis of relief in equity.

The general practice in this country and in England, when a bill in equity is dismissed without a consideration of the merits, is for the court to express in its decree that the dismissal is without prejudice.

THE case is stated in the opinion.

*Mr. Richard D. Jones* for appellant. *Mr. William H. Swift* filed a brief for same.

*Mr. J. M. Woolworth* and *Mr. L. Mayer* for appellees.

MR. JUSTICE JACKSON delivered the opinion of the court.

The appeal in this case presents for our consideration and determination the question whether the Circuit Courts of the United States can properly entertain jurisdiction of a suit in equity which unites and seeks to enforce both legal and equitable demands, when the right to the equitable relief sought rests and depends upon the legal claim being first ascertained and established, and where the person against whom such legal demand is asserted is not made a party defendant; or, stated in another form more directly applicable to the present case, can a party having a claim for unliquidated damages against a corporation, which has not been dissolved, but has merely distributed its corporate funds amongst its stockholders, and ceased or suspended business, maintain a suit on the equity side of the United States Circuit Court against a portion of such stockholders, to reach and subject the assets so received by them to the payment and satisfaction of his claim, without first reducing such claim to judgment and without making the corporation a defendant and bringing it before the court? This question, which hardly needs or requires more than its bare

statement to indicate the answer that must be made thereto, arises as follows :

The appellant, the Swan Land and Cattle Company, Limited, a corporation organized under the Companies' Acts of Great Britain and being a citizen of that kingdom, filed its bill in equity in the court below against the appellees, all of whom are citizens of Illinois, except two who are citizens of Wyoming, containing substantially the following material averments : That in November, 1882, three Wyoming corporations, known, respectively, as the Swan and Frank Live Stock Company, the National Cattle Company, and the Swan, Frank and Anthony Cattle Company, being the owners of large herds of cattle and other property in Wyoming, and engaged there in the business of raising and selling what are known as range cattle, entered into an agreement in writing with one James Wilson, of Edinburgh, Scotland, acting in his own behalf and for others to be thereafter associated with him in a limited liability company to be formed under the Companies' Acts, of Great Britain, by the terms of which said company, when organized, was to purchase of the Wyoming corporations, for the sum of $2,553,825, "all and singular the lands and tenements, water rights, improvements upon lands, houses, barns, stables, corrals, and other improvements and grazing privileges ; also, all live stock, consisting of neat cattle, horses and mules belonging to the said three Wyoming corporations, or any or either of them ; also, all live stock, brands, tools, implements, wagons, harnesses, ranches, camps, round-up outfits, and branding irons," belonging to said Wyoming corporations, all of such property being particularly enumerated and described in certain inventories annexed to said agreement.    In regard to all the property sold, except the live stock, the agreement provided that the representations in those inventories should be verified by a competent inspector or inspectors to be named by the British company, prior to the transfer of the title to such property, and that deficiencies, if any, in such representations should be made good or supplied by the Wyoming companies.    The agreement then provided, "as to all live stock mentioned and described in said inventories

that said first parties [the Wyoming corporations] shall and do hereby agree and guarantee ·to and with said second party [the British ·corporation] ·that the herd-books of said first parties, showing the acquisitions, increase, disposition of, and number of cattle now on hand of said first parties, respectively, have been truly and correctly kept "; a copy of which herd-books were required to be furnished to the party of the second part.

The bill then averred·that, after the making and delivery of this agreement, the vendor companies proceeded to make the necessary arrangements for the turning over of their property to the purchaser, in accordance with the terms of the agreement ; and that, in pursuance of the agreement, the said Wilson returned to Scotland and organized a limited liability company, completing its organization March 30, 1883. In effecting this organization Wilson was aided in inducing parties to take stock in the new company by a certain report in relation to the properties that were the subject of the negotiation, made by one Lawson in December, 1882, who had previously visited and inspected said properties, and who, it was averred, was acting in the interests of the vendor corporations, and was in their employ, having received from them the large sum of $12,000 for said report; and also by Alexander H. Swan, the president of each of the vendor corporations, who, at that time, was in Scotland, and represented that the number of cattle the vendors would turn over, under the agreement, was 89,167, as was shown by alleged copies of the herd-books which he produced and also by certain alleged inventories of the stock on the ranches, and that any death losses in the herds would be more than made good by the number of calves on the ranches that escaped branding at the usual branding season, and who also made certain estimates as to the prospective increase in the herds, which representations and estimates were implicitly relied upon by the parties forming the new corporation. By a supplemental agreement, also in writing, between the contracting parties, it was provided, among other things, that Swan should become the general manager of the new com-

pany at a salary of $10,000 a year, and he and the vendor companies should subscribe for 10,000 shares of stock in the new company; and the vendors then agreed that if the number of calves branded in 1883 belonging to the herds sold should be fewer than 17,868, then they should be jointly and severally bound to pay to the new company $31.68 for each deficiency in that number.

The bill then averred that the vendors represented that it would be impossible to count the cattle. upon the ranches, and that the new company would be obliged to take possession of them, wherever they might be ranging, without any count being made; and that, relying upon all these representations made by the vendors, and in their behalf, as above set forth, the new company received delivery of the property so purchased by it, and paid the purchase price it had agreed to pay, in the manner agreed upon, and did and performed all the things it was required to do and perform by the terms of the aforesaid agreements.

The bill then averred that the representations made by the vendors, and in their behalf, as respects the number of cattle on the ranches, and which were relied upon by the parties forming the new company, were grossly untrue, and known at the time by the vendor companies to be so, and that the number of cattle actually turned over to the new company, under the agreement, was, at least, 30,000 less than was represented by the vendors, whereby it had suffered loss and damage in the sum of, at least, $800,000.

The bill then proceeded as follows: "Your orator further showeth that said vendors had no other business except the management of the herds sold to your orator, and no other assets, or substantially none, except the properties sold by them to your orator; and your orator showeth that, after the sale of their said properties to your orator, and the receipt by them of the purchase price, as aforesaid, said three vendors paid whatever liabilities they had outstanding, except their liability to your orator herein set forth, and distributed the money and stock obtained from your orator as the proceeds of said sale and all their other assets amongst their respective

shareholders, and the same were received by said shareholders, and since that time said three corporations have not, nor has either of them, made any use whatever of their franchises, but they have abandoned the same, and neither of said corporations has any officer or agent upon whom process can be served, and they have not, nor has either of them, any assets of any kind out of which any judgment at common law against them, or either of them, could be satisfied. Your orator further showeth that the assets of said corporation were in the hands of said corporations a trust fund, held by said corporations in trust to satisfy the claim of your orator herein set forth, before the shareholders of said corporations were entitled to receive any portion of the same, and said shareholders, in receiving said assets, did take and now hold the same as trustees in place of said corporations, and subject to the lien of your orator's aforesaid claim, and should account for the same to your orator, and apply the same, so far as necessary, in satisfaction of your orator's claim herein set forth."

The bill prayed that the several defendants be required to answer certain interrogatories thereto attached, but not under oath, and that whatever property each and every one of them may have received from the vendor corporations, or any of them, in the distribution of the assets aforesaid, be decreed to have been taken and to be held by them in trust for the payment of the claim of the plaintiff, and "be applied, so far as shall be necessary, in satisfaction of the damages which shall be found due to your orator from the vendors aforesaid upon final hearing hereof," and for other and further relief, etc.

The three vendor corporations were not made parties defendant to the suit. The two Wyoming defendants were not served with process, and did not appear in the case. The Illinois defendants who were served with process entered a special appearance, and demurred to the bill upon three grounds: (1) That the bill did not state a case within the equity jurisdiction of the court, or one entitling the complainant to any discovery or equitable relief as prayed; (2) that the several vendor corporations, and each of them, were necessary parties

to the suit; and (3) that the averments of the bill are too general in their nature to charge the defendants or either of them as a trustee of any portion of the assets of any one of the vendor corporations.

The demurrer was sustained by the Circuit Court and the bill dismissed, (39 Fed. Rep. 456,) and an appeal from that decree brings the case here.

The grounds upon which the court below based its decision and decree were: (1) that the complainant had no standing in a court of equity without first reducing its claim for damages to a judgment; and (2) that even if that position be untenable, still the vendor corporations were necessary and indispensable parties to the suit.

The bill does not seek to hold the defendants below personally liable for the alleged fraud committed by the vendor corporations in which they were stockholders. There is no averment or even intimation in the bill that the defendants in any way participated in the fraudulent misrepresentations of the vendor companies, on which it is charged the complainant relied and acted to its injury. They are, therefore, not personally responsible for any damage resulting to the complainant by reason of the alleged fraud.

The theory of the bill is, that the assets of the vendor corporations which have been distributed to and received by the defendants as stockholders constitute a *trust fund* for the payment of all debts and demands against the companies, and may, therefore, be followed in the hands of, and recovered from, such stockholders, to the extent necessary to discharge valid claims against the corporations from which they were received. The funds sought to be reached are undoubtedly applicable, under proper proceedings against all necessary parties, to the payment, so far as may be needed, of outstanding indebtedness against the corporations which distributed the same; but the difficulty here is that the complainant has not adopted the requisite and necessary procedure to subject said funds thereto. It has no judgment against the corporations by which it was defrauded, nor are such corporations made parties defendant to the suit or brought before the

court. The stockholder defendants, who have been served with process and entered their appearance, do not undertake to represent, and cannot in any way represent, the corporations against whom the claim for damages is asserted. *Bronson* v. *La Crosse & Milwaukee Railroad*, 2 Wall. 283, 301, 302.

Now, it is too clear to admit of discussion that the various corporations charged with the fraud which has resulted in damage to the complainant are necessary and indispensable parties to any suit to establish the alleged fraud and to determine the damages arising therefrom. Unless made parties to the proceeding in which these matters are to be passed upon and adjudicated, neither they nor their other stockholders would be concluded by the decree. The defendants cannot be required to litigate those questions which primarily and directly involve issues with third parties not before the court. As any decree rendered against them would not bind either the corporations or their co-shareholders, it would manifestly violate all rules of equity pleading and practice to pursue and hold the defendants on an unliquidated demand for damages against companies not before the court. The complainant's right to follow the corporate funds in the hands of the defendants depends upon its having a valid claim for damages against the vendor corporations. That demand is not only legal in character, but can be settled and determined and the amount thereof ascertained by some appropriate proceeding to which the corporations against which it is made are parties and have an opportunity to be heard. Stockholders cannot be required to represent their corporations in litigation involving such questions and issues. The corporations themselves are indispensable parties to a bill which affects corporate rights or liabilities. Thus, in *Deerfield* v. *Nims*, 110 Mass. 115, it was held that the corporation was a necessary party in a bill by a creditor of the corporation against its officers or stockholders who had divided its assets among themselves. So, in *Gaylords* v. *Kelshaw*, 1 Wall. 81, 82, it was held by this court that in a bill to set aside a conveyance as made without consideration and in fraud of creditors, the alleged fraudulent grantor is

a necessary defendant, because it was' his debts that were sought to be collected and his fraudulent conduct that required investigation.

The general rule that suits in equity cannot be entertained and decrees be rendered, when necessary or indispensable parties, whether corporations or individuals, are not brought before the court, is not affected by section 1 of the act of February 28, 1839, c. 36, re-enacted in section 737 of the Revised Statutes of the United States, as this court has repeatedly held. *Shields* v. *Barrow,* 17 How. 130, 141; *Coiron et al.* v. *Millaudon,* 19 How. 113, 115; *Ogilvie* v. *Knox Ins. Co.,* 22 How. 380; *Barney* v. *Baltimore,* 6 Wall. 280; *Davenport* v. *Dows,* 18 Wall. 626. The same rule is applied in respect to averments as to citizenship of necessary parties to confer jurisdiction or the right of removal. *Thayer* v. *Life Association of America,* 112 U.' S. 717, 719; *St. Louis & San Francisco. Railway* v. *Wilson,* 114 U. S. 60, 62.

To take the present case out of the operation of the general rule, it is argued on behalf of appellants that the bill discloses such a practical abandonment of their franchises as to amount to a dissolution of the vendor corporations. We cannot so construe the bill. The dissolution of corporations is or may be effected by expirations of their charters, by failure of any essential part of the corporate organizations that cannot be restored, by dissolution and surrender of their franchises with the consent of the State, by legislative enactment within constitutional authority, by forfeiture of their franchises and judgment of dissolution declared in regular judicial proceedings, or by other lawful means. No such dissolution is alleged in the bill. The averments that said corporations paid all other liabilities, and thereafter distributed their remaining assets amongst their respective stockholders, and have since made no use of their franchises, and have no agent or officer upon whom process can be served, and no assets out of which any judgment against them could be satisfied, fall far short of a dissolution such as would prevent a suit against the corporations or their trustees as provided by the laws of Wyoming, to establish the validity and amount of the appellants' claim

for damages. (Secs. 506, 515.) The cases cited to the point that, when the corporation is dissolved, the necessity for making it a party is dispensed with, need not, therefore, be reviewed. They are not applicable to the present case. It does not help the matter that complainant could not get the vendor corporations before the Circuit Court for the Northern District of Illinois. That fact in no way affects the question of their being necessary parties, without whose presence no decree could be rendered against the appellees. We do not deem it necessary to refer to the Wyoming statutes further than to say we think they provide the means by which the vendor corporations could there have been sued.

We are also clearly of opinion that the court below was correct in sustaining the demurrer to the bill upon the other ground assigned, that the complainant had not previously reduced its demand against the vendor corporations to judgment. That claim was purely legal, involving a trial at law before a jury. Until reduced to judgment at law, it could not be made the basis of relief in equity. This is well settled by the decisions of this court in *Taylor* v. *Bowker*, 111 U. S. 110; *National Tube Works Co.* v. *Ballou*, 146 U. S. 517, 523; and *Scott* v. *Neely*, 140 U. S. 106, 115. In this latter case the subject is fully reviewed and the question settled so far as the federal courts are concerned.

Our conclusion is that there is no error in the decree of the Circuit Court sustaining the demurrer to the bill, but we are of opinion that the bill, instead of being dismissed generally, should have been dismissed without prejudice. In *Durant* v. *Essex Company*, 7 Wall. 107, 113, it is said that the general practice in this country and in England, when a bill in equity is dismissed without a consideration of the merits, is for the court to express in its decree that the dismissal is without prejudice, and that the omission of that qualification in a proper case will be corrected by this court on appeal, in support of which numerous authorities are cited. In *Kendig* v. *Dean*, 97 U. S. 423, 426, the same practice was adopted.

*The decree must, therefore, be modified at appellants' costs, and the cause remanded with directions to dismiss the bill without prejudice, and it is so ordered.*

MR. JUSTICE BROWN dissenting.

I concur in the opinion of the court that the question involved in this case needs little more than its bare statement to indicate the answer that should be made to it. But I do not concur in the answer made by the court. Admitting to the fullest extent the proposition that the mere discontinuance of business by a corporation, the sale of its assets, the failure to re-elect officers and the non-user of its franchise, do not, *ipso facto*, work a dissolution of the corporation, it seems to me that this is aside from the merits of the case. I agree, too, that before resorting to the stockholders a judgment should, if possible, be obtained against the principal debtors, which in this case are the three Wyoming corporations. But the law does not compel that which is impossible, and if the facts alleged in the bill show that no judgment can be obtained against the corporations, and that it is useless to pursue them, the bare existence of such corporations ought not to defeat the recovery of a just claim. I do not understand it to be denied that if the corporations had been formally dissolved by the decree of a competent court, the plaintiff might have maintained this bill, and the fact that it had no judgment against the corporations would be no defence.

Now, the allegations of the bill in this case are such as to show, not only that the Wyoming corporations are practically dissolved, and exist only in name, but that it would be impossible to obtain a judgment against them in the jurisdiction where they were organized. The Revised Statutes of Wyoming (sec. 2431) provide that "A summons against a corporation may be served upon the president, mayor, chairman or president of the board of directors or trustees, or other chief officer, or if its chief officer be not found in the county, upon its cashier, treasurer, secretary, clerk or managing agent; or if none of the aforesaid officers can be found, by a copy left at the office or other place of business of said corporation, with the person having charge thereof." In that connection the allegation of the bill is, "that after the sale of their said properties to your orator and the receipt by them of the pur-

chase price as aforesaid, said three vendors paid whatever liabilities they had outstanding except their liability to your orator herein set forth, and distributed the money and stock obtained from your orator as the proceeds of said sale and all their other assets amongst their respective shareholders, and the same were received by said shareholders, and since that time said *three corporations have not nor has either of them made any use whatever of their franchises, but they have abandoned the same, and neither of said corporations has any officer or agent upon whom process can be served,* and they have not nor has either of them any assets of any kind out of which any judgment at common law against them or either of them could be satisfied." Now, if there be no officer or agent of a corporation upon whom process can be served, it follows that there can be no office or other place of business of such corporation within the meaning of section 2431, since the only object of an office or place of business is for the accommodation of an officer or agent. The act does not authorize service upon a trustee, but only upon the president of the board of trustees who would, of course, be an officer of the corporation. The allegations of the bill in these particulars may be shown to be untrue, but upon demurrer they must be taken as true.

It is true that by section 2435 " service by publication may be had . . . in actions against a corporation incorporated under the laws of this Territory, which has failed to elect officers, or to appoint an agent, upon whom service of summons can be made, . . . and which has no place of doing business in this Territory."

But, while such service by publication might be effective so far as to charge any property of the corporation within the Territory, it would not create a general liability against the corporation which would be available elsewhere. This court has repeatedly held that a personal judgment is without any validity if it be rendered against a party served only by publication of a summons, but upon whom no personal service of process within the State was made, and who did not appear. *Pennoyer* v. *Neff*, 95 U. S. 714; *Harkness* v. *Hyde*, 98 U. S. 476; *St. Clair* v. *Cox*, 106 U. S. 350.

The cases relied upon to sustain this decree do not touch this question, and the authorities which require corporations to be made parties to a bill against the stockholders, have no application to cases in which it is not only useless but impossible to make them parties. I do not think the defendants in this case, who are charged with receiving the proceeds of a gross fraud, should be permitted to take refuge in the shadow of these defunct corporations.

MR. JUSTICE GRAY was not present at the argument, and took no part in the decision of this case.