### MILLER et al. v. CLIFFORD et al.

(Circuit Court of Appeals, First Circuit. November 30, 1904.)

#### No. 555.

1. REMOVAL OF CAUSES—DIVERSITY OF CITIZENSHIP—SEPARABLE CONTROVERSY.

In a suit in equity brought in a state court on behalf of all of the creditors of an insolvent bank in Colorado against a number of the stockholders to enforce their double liability under the Colorado statute, by requiring them each to pay the full amount of such liability to a master, to be applied pro rata, together with such sums as may be collected from other stockholders, on the debts of the bank—the remainder, if any, to be returned to defendants—there is no separate controversy with a single defendant which entitles him to remove the cause into a federal court.

---

¶ 1. Separable controversy ground for removal of cause to federal court, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Valleytown Mineral Co., 35 C. C. A. 155.

**2. SAME—REMOVAL BY ONE DEFENDANT.**
Where a suit does not present a separable controversy, it can only be removed on a petition in which all the defendants join.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

William Reed Bigelow, for appellants.

William H. Leonard, Charles H. Hanson, and Even Winthrop Freeman, for appellees.

Before PUTNAM, Circuit Judge, and BROWN and HALE, District Judges.

HALE, District Judge. This is a bill in equity filed July 17, 1903, in the superior court of Suffolk county, in the commonwealth of Massachusetts, by Alfred L. Miller and four others, citizens of the state of Colorado, creditors of the State Bank of Monte Vista, in the state of Colorado, acting for themselves and for all other creditors similarly situated who joined or may join in the action, plaintiffs, against George E. Clifford and five others, all of whom are declared in the bill of complaint to be of the commonwealth of Massachusetts, defendants. A list of the creditors who joined in the bill is set forth in a schedule annexed to it, which schedule is alleged to contain over 90 per cent. of all the known creditors of said bank. Further averments of the bill are: That the State Bank of Monte Vista was, and still is, a corporation organized under the laws of the state of Colorado on or before August 1, 1890. That said bank did a general banking business in Colorado until June 15, 1899, when it became insolvent, and made an assignment, under the laws of the state of Colorado, of all its assets to Norman H. Chapman, assignee, who gave bond, and is now acting as assignee. That the plaintiffs and all other creditors who joined in this action, except some who are specifically excepted, filed their claims with the assignee, and that there have been paid on all said claims 19½ per cent. of the original face thereof, exclusive of interest, and that the assets of the bank have been substantially exhausted thereby; that the several plaintiffs deposited in the bank at different times from the organization thereof certain sums, and that the balance due to the plaintiffs by the said bank at the date of its failure was as follows:

| | |
|---|---|
| Alfred L. Miller | $ 929 68 |
| Dan Workman | 1,100 00 |
| Phœbe C. Smith | 1,145 00 |
| Stephen W. Tracy | 50 00 |
| W. O. Stratton | 725 00 |

—That the aggregate amount of all the claims against said bank at the time of the assignment was $62,475.88. That the total capital of the bank was $80,000, divided into 800 shares, of the par value of $100 each. That there has been paid by the assignee on said claims against the bank the sum of $11,646.90, leaving a balance due of $50,828.98, with interest thereon at 8 per cent., under the laws of the state of Colorado, from the time of the assignment, June 15,

133 F.—56

1899. That the laws of the state of Colorado at the time of the organization of the bank provided as follows: "Shareholders in banks, savings banks, trust deposit and security associations shall be held individually responsible for debts, contracts and engagements of the said associations in double the amount of the par value of the stock owned by them respectively." That the defendants named in the bill are the only stockholders residing within the jurisdiction of the court. That they were stockholders upon June 15, 1899, to wit:

| | | |
|---|---|---|
| George E. Clifford | 10 | shares |
| Walter A. Fairbanks | 40 | " |
| Abbie F. Frost | 10 | " |
| Roger P. Frost | 10 | " |
| Mattie A. Ingalls | 10 | " |
| Leila B. Fairbanks | 203 | " |
| Caroline B. Farrar | 20 | " |

—That the remaining stockholders are as set forth in a certain schedule annexed to the bill. That 77 shares of stock are owned by residents of Colorado, 307 shares by the defendants, and 416 by residents of other states. That there is now unpaid on claims of the plaintiffs and all other known creditors entitled to enforce liability the sum of $62,475.88, with interest thereon from June 15, 1899, at 8 per cent., under the laws of the state of Colorado, to December 14, 1899, when 15 per cent. of said principal sum was paid by said assignee, with interest on the balance until December 1, 1901, when 4½ per cent. of said principal sum was paid by said assignee, with interest on the balance until the finding of this bill of complaint, which sum amounts to more than $60,000. Wherefore it says that, if every stockholder should pay $80 upon every share of his stock in partial satisfaction of his said double liability, this would be insufficient wholly to pay said creditors.

The bill contains certain averments of law and certain other allegations which are not material to be stated here. The bill prays (1) that the defendants be adjudged stockholders; (2) that the defendants be ordered to pay to the plaintiffs named herein, or to a special master appointed by the court, twice the amount of the par value of the shares of stock owned by them, respectively, out of which the plaintiffs and all creditors of the said bank now joined or that may hereafter be joined "shall be paid forthwith, pro rata, such percentage of their claims as they shall be entitled to receive in any event, provided this liability is enforced against all of the stockholders of said bank, and is fully paid by them, and the remaining sum in the hands of the plaintiffs or said special master shall be held to pay to said creditors, pro rata, the balance due upon their claims, if any, after the plaintiffs have recovered all that they are able to recover by process of law and due diligence against the remaining stockholders of the State Bank of Monte Vista, and, if any sum remains in the hands of the plaintiffs or of said special master after said creditors have been paid in full, said remaining sum shall then be repaid pro rata to the defendants"; (3) that the court appoint a special master to receive from the de-

fendants the amounts for which they may be found liable as stock-holders under said double liability, and "forthwith to pay pro rata to the creditors now or hereafter joined herein such percentage of their claims as they shall be entitled to receive in any event, pro-vided this liability is enforced against all the stockholders of said bank and is fully paid by them, and to hold the remaining sum un-til the plaintiffs have recovered all that they are able to recover by process of law and due diligence from the remaining stockhold-ers of said bank of Monte Vista, and then to pay said creditors of said bank, pro rata, all that remains unpaid on their said claims, with interest, and thereafter to repay the balance, if any, pro rata, to the defendants," and for other and further relief.

On September 8, 1903, Caroline B. Farrar, one of the defendants, filed a petition under the act of 1875, as amended by the act of 1887–88 (Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]), for the removal of the case into the Circuit Court of the United States, alleging that the controversy is between citi-zens of different states; that the petitioner, a defendant in the suit, w^s at the time of the commencement of the suit, and still is, a citi-zen of the state of Maine; that she is a nonresident of the state in which the suit was brought, to wit, the state of Massachusetts, and that the other defendants severally in the above-entitled suit were then, and still are, each and all, citizens of the state of Massachu-setts, and that the plaintiffs are, each and all, citizens of the state of Colorado; that "in said suit above mentioned there is a contro-versy which is wholly between citizens of different states, and which can be fully determined as between them, to wit, a controversy be-tween said petitioner, defendant, and the said" several plaintiffs—naming them by name. It appears by the record that on October 17, 1903, the cause was removed to the Circuit Court of the United States. On December 18, 1903, a demurrer was filed by the de-fendants, and on October 21, 1903, there was filed a motion to re-mand the case to the state court on the ground that the Circuit Court of the United States is without jurisdiction to hear and de-termine the cause. April 25, 1904, the cause was heard in the Cir-cuit Court on the motion to remand and upon the demurrer. The motion to remand was denied, the demurrer was sustained, and the bill dismissed. From this decree the complainants have ap-pealed to this court.

The first question to be considered is whether the Circuit Court of the United States properly exercised jurisdiction in the case. The cause was removed from the state court to the Circuit Court of the United States, as we have said, on the ground that there is a controversy wholly between citizens of different states, and which can be fully determined as between them, to wit, a controversy between the petitioner, defendant, and the plaintiffs. Does the case present a separable controversy?

The question of separable controversy has been fully discussed by the Supreme Court in a long line of cases. The leading case upon the subject is Torrence v. Shedd, 144 U. S. 530, 12 Sup. Ct.

726, 36 L. Ed. 528. In that case Mr. Justice Gray, in speaking for the court, said:

"But in order to justify such removal on the ground of a separate controversy between citizens of different states there must, by the very terms of the statute, be a controversy 'which can be fully determined as between them'; and, by the settled construction of this section, the whole subject-matter of the suit must be capable of being finally determined as between them, and complete relief afforded as to the separate cause of action without the presence of others originally made parties to the suit."

In Louisville R. Co. v. Ide, 114 U. S. 56, 5 Sup. Ct. 735, 29 L. Ed. 63, Mr. Chief Justice Waite, announcing the opinion of the Supreme Court, said:

"Separate answers by the several defendants sued on joint causes of action may present different questions for determination, but they do not necessarily divide the suit into separate controversies. A defendant has no right to say that an action shall be several, which a plaintiff elects to make joint. A separate defense may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his own suit to final determination in his own way. The cause of action is the subject-matter of the controversy, and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings. * * * On the one side of the controversy upon that cause of action is the plaintiff, and on the other all the defendants. The separate defenses of the defendants relate only to their respective interests in the one controversy. The controversy is the case, and the case is not divisible."

In Crump v. Thurber, 115 U. S. 60, 5 Sup. Ct. 1154, 29 L. Ed. 328, Mr. Justice Blatchford, for the Supreme Court, said:

"The jurisdiction of the Circuit Court must be determined, for the purpose of this case, by the status of the parties and the nature of the relief which had been asked by the plaintiff at the time of the application for removal."

Blake v. McKim, 103 U. S. 336, 26 L. Ed. 563; Hyde v. Ruble, 104 U. S. 407, 26 L. Ed. 823; Ayres v. Wiswall, 112 U. S. 187, 5 Sup. Ct. 90, 28 L. Ed. 693; Brown v. Trousdale, 138 U. S. 389, 11 Sup. Ct. 308, 34 L. Ed. 987; Wilson v. Oswego Township, 151 U. S. 67, 14 Sup. Ct. 259, 38 L. Ed. 70.

These cases decide that the issue brought before the court in cases of alleged separable controversy is not whether the party asking for the removal may have a separate decree and a separate execution, but what the whole case shows the controversy to be. Each case of a defendant petitioning for removal of a cause presents the question whether the whole subject-matter of the suit can be determined between the plaintiff and the petitioning defendant without the presence of the other parties. The policy of courts—especially of equity courts—is not to divide the subject-matter of a great controversy into a multitude of small controversies, and the statute of removal does not call for such division. Mr. Justice Story states with perfect clearness the theory of equity courts upon the subject of parties:

"It is the great object of courts of equity to put an end to litigation, and to settle, if possible, in a single suit, the rights of all parties interested or affected by the subject-matter in controversy." Story's Equity Juris. vol. 2, § 1526.

The later cases of the Supreme Court also state the rule in conformity with the early and leading cases which we have cited. In

Minnesota v. Northern Securities Co., 194 U. S. 64, 24 Sup. Ct. 602, 48 L. Ed. 870, the court says:

"Under existing statutes regulating the jurisdiction of the courts of the United States, a case cannot be removed from a state court as one arising under the Constitution or laws of the United States unless the plaintiff's complaint, bill, or declaration shows it to be a case of that character. 'If it does not appear at the outset,' this court has quite recently said, 'that the suit is one of which the Circuit Court, at the time its jurisdiction is invoked, could properly take cognizance, the suit must be dismissed.'"

The court, in its opinion, cites and quotes Railway Co. v. Lewis, 173 U. S. 457, 19 Sup. Ct. 451, 43 L. Ed. 766; Chappell v. Waterworth, 155 U. S. 102, 15 Sup. Ct. 34, 39 L. Ed. 85. The case contains a further reference to all the leading recent authorities upon this subject. While the doctrine of the Supreme Court is clear that a cause cannot be removed from a state court to the Circuit Court of the United States unless the jurisdiction of the Circuit Court is clearly shown by the plaintiff's statement of his own case, and while that want cannot be supplied by any statement in the petition for removal or in the subsequent pleadings, it ought nevertheless to be said that this rule has no reference to averments of the moving party as to rules of law, or as to any other matters unnecessarily or immaterially stated either in the allegations of a bill or in the prayer for relief. The party invoking the aid of the court to remove a case is entitled to have the court look not only at the pleadings of the moving party, but to look carefully also at the Constitution, statutes, and judicial decisions of any state, so far as they bear upon the question at issue. In examining the case before us in the light of the rule of the Supreme Court, we have no difficulty in coming to a conclusion that the case falls distinctly within the decisions which we have cited.

In Auer v. Lombard, 72 Fed. 209, 19 C. C. A. 72, this court had before it the statute of Colorado which is now before us. In that case the court referred to the fact that a single creditor may with great facility proceed against a nonresident stockholder by a suit at law, and referred by way of illustration to Flash v. Conn, 109 U. S. 371, 3 Sup. Ct. 263, 27 L. Ed. 966. Under the ruling in that case, this court was led to forecast the construction of the statute of Colorado which the courts of that state might fairly put upon it, and concluded that those courts might properly hold that the remedy under these statutes would be at law in behalf of each creditor severally against one or more stockholders. The decision of Auer v. Lombard, however, did not necessarily depend upon that construction being given to the statute. The appeal must in any event have been dismissed, in view of Cattle Co. v. Frank, 148 U. S. 603, 13 Sup. Ct. 691, 37 L. Ed. 577, in which the Supreme Court held that in an action of that kind, affecting the corporate rights of a corporation, such corporation is an indispensable party. Since the decision of that cause, the Supreme Court of Colorado has construed the statute in question in Zang v. Wyant, 25 Colo. 551, 56 Pac. 565, 71 Am. St. Rep. 145, and has held that a suit in equity by or for all the creditors is the appropriate mode of enforcing a liability under this statute. The Colorado court, in coming to this

conclusion, cited and relied upon Terry v. Little, 101 U. S. 216, 25 L. Ed. 864.

In the case at bar we have recited the substantial averments and prayers of the bill of complaint in order to bring clearly before us the subject-matter of the controversy and the precise relief sought, such relief depending, as we have shown, upon the averments which the plaintiff has made in his pleadings. The respondents are stockholders of a state bank in Colorado, which is alleged to have failed and to have become insolvent. The relief sought against these shareholders under the laws of Colorado is for a liability double the amount of the par value of the stock owned by the shareholders. The bill states a cause of action in which all the defendants who have been joined are distinctly interested. The prayers of the bill call for the appointment of a special master, an accounting in favor of all the creditors, and a pro rata payment to them of such percentage as they shall be entitled to receive, "provided liability is enforced against all the stockholders of said bank, and is fully paid by them." The third prayer makes it the duty of the court to cause a final repayment to be made to the defendants of any sum remaining after the double liability of the shareholders has been enforced, and after all the creditors have been paid in full, if that state of fact shall arise. Clearly, the averments and the prayers of the bill do not lead toward relief against any one stockholder without an accounting in which all are interested. The whole subject-matter of the suit is not capable of being finally determined without joining all the defendants who are made parties to the suit. We are not called upon to decide whether or not certain other parties are, indeed, necessary to be joined, in order that complete and conclusive relief may be obtained in equity. The case clearly calls for a proportionate liability of all stockholders, as in Terry v. Little, supra. In our opinion, no separable controversy is stated against the petitioning defendant.

As we have found that the case does not present a separable controversy, it follows that, in order to effect a removal of it, all the defendants must join in the application for such removal. There can be no doubt but that this is the present rule of the Supreme Court. Railway Co. v. Martin, 178 U. S. 248, 20 Sup. Ct. 854, 44 L. Ed. 1055; Whitcomb v. Smithson, 175 U. S. 635, 20 Sup. Ct. 248, 44 L. Ed. 303; Railway Co. v. Dixon, 179 U. S. 140, 21 Sup. Ct. 67, 45 L. Ed. 121; Gableman v. Railway Co., 179 U. S. 337, 21 Sup. Ct. 171, 45 L. Ed. 220. In this case only one of the defendants has sought to remove the cause. No separable controversy being stated against the petitioning defendant, and all the defendants not having joined in the petition, the case must be remanded to the state court.

The decree of the Circuit Court is reversed, and the cause is remanded to that court, with a direction to remand it, for want of jurisdiction, to the state court whence it came, with costs of the Circuit Court and of this court to the complainants against Caroline B. Farrar.