PIERCE et al. v. UNITED STATES.*

(Circuit Court of Appeals, Eighth Circuit. April 15, 1919. Rehearing Denied July 15, 1919.)

No. 5145.

1. CREDITORS' SUIT ⚷⇒7—RIGHT TO REMEDY—JUDGMENT IMPOSING FINE IN CRIMINAL CASE.

Under Rev. St. § 1041 (Comp. St. § 1705), providing that a judgment imposing a fine for an offense against the United States "may be enforced by execution against the property of the defendant in like manner as judgments in civil cases are enforced," such a judgment may support a creditors' bill in aid of an execution which has proved fruitless.

2. CORPORATIONS ⚷⇒259(8)—STOCKHOLDERS—LIABILITY—JUDGMENT AGAINST CORPORATION FOR FINE—CREDITORS' SUIT.

Where a corporation pending a criminal prosecution against it by the United States, resulting in a judgment imposing a fine, sold all of its property and distributed the proceeds among its stockholders, such stockholders may be held liable in a creditors' suit for the judgment against the corporation to the extent of their distributive share of its funds, and this although the purchaser assumed all of its debts and liabilities.

3. WORDS AND PHRASES—"DEBT."

In a broad sense a debt may signify any duty to respond to another in money, labor, or service. It may even mean a moral or honorary obligation, unenforceable by legal action. When used restrictively, it may mean, without more, an obligation founded on contract to pay a definite or certain sum of money, and whether the duty to pay a sum of money is or is not a debt depends upon the particular sense in which it is used.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

4. FINES ⚷⇒6—ENFORCEMENT—OFFENSE AGAINST UNITED STATES—"EXECUTION."

The word "execution," as used in Rev. St. § 1041 (Comp. St. § 1705), providing for the enforcement of a judgment imposing a fine for an offense against the United States by execution against the property of the defend-

---

ant, signifies generally the means for enforcing the judgments of courts in civil cases, and embraces those processes and proceedings in aid of or supplemental to an execution that are customary in civil cases.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Execution.]

Wade, District Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit in equity by the United States against Clay Arthur Pierce and others. Decree for the United States and certain defendants appeal. Affirmed.

Albert D. Nortoni and Truman Post Young, both of St. Louis, Mo. (Samuel W. Fordyce, Jr., John H. Holliday, Thomas W. White, and George T. Priest, all of St. Louis, Mo., and J. Markham Marshall, of New York City, on the brief), for appellants.

Robert A. Hunter, Sp. Asst. Atty. Gen., and W. H. Woodward, Asst. U. S. Atty., of St. Louis, Mo., for the United States.

Before HOOK and STONE, Circuit Judges, and WADE, District Judge.

HOOK, Circuit Judge. This suit in equity was brought by the United States in the United States District Court for the Eastern District of Missouri, against the Waters-Pierce Oil Company, a Missouri corporation, and certain of its stockholders, to recover the amount of a judgment obtained against that company in the United States District Court for the Western District of Louisiana. The government was given a decree against three of the stockholders, and they appealed.

The facts, briefly stated, are these: In January, 1907, the Waters-Pierce Oil Company was indicted in the court in Louisiana for receiving rebates on interstate shipments contrary to the Elkins Act (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [Comp. St. §§ 8597–8599]). In July, 1913, the Waters-Pierce Oil Company sold and conveyed all its property and assets to the Pierce Oil Corporation, organized under the laws of Virginia, for $5,000,000 in money and $10,500,000 of the common stock of the latter. The vendee assumed all the vendor's "debts, liabilities and obligations." The money and shares of stock were lodged with trustees, who distributed them ratably among the stockholders of the Waters-Pierce Oil Company, including the three appellants, and that company thereupon ceased business. In March, 1914, the case in Louisiana was tried, with the result that the Waters-Pierce Oil Company was convicted and fined $14,000. The offense under the Elkins Act was punishable by a fine only. In March, 1915, the judgment was affirmed by the Fifth Circuit Court of Appeals. 137 C. C. A. 293, 222 Fed. 69. An execution was issued to the marshal of the Louisiana district and returned nulla bona in August, 1915. This suit was begun in February, 1916. In March, 1917, another execution was issued on the judgment in Louisiana, but directed to the marshal for the Eastern district of Missouri. See Rev. St. § 986 (3 U. S. Comp. Stat. 1916, § 1632). This execution was also returned nulla bona; and in August of that year the government filed an amend-

ed complaint, setting forth the facts regarding the second execution. The decree against the three appellants was not in excess of the amounts of money they received in the distribution of the proceeds of the sale. The controlling questions in the case are whether a judgment imposing a fine in a criminal prosecution by the United States may support a creditors' bill in aid of an execution that has proved fruitless, and, if so, whether the appellants can be held liable, to the extent of their distributive shares of the funds, for the judgment against their corporation under the circumstances of this case.

[1] It is contended by the appellants that the relation of debtor and creditor is essential to a proceeding in equity in aid of an execution at law, that a liability to a fine for a penal offense does not give rise to the relation, and that the character of the judgment is determined by that of the liability upon which it is founded. The term "debt" has a variety of meanings, not a settled or invariable one. It takes color from its surroundings. Whether the duty to pay a sum of money is or is not a debt depends upon the particular sense in which it is used.

[3] In a broad sense a debt may signify any duty to respond to another in money, labor, or service. It may even mean a moral or honorary obligation, unenforceable by legal action. United States v. Realty Co., 163 U. S. 427, 440, 16 Sup. Ct. 1120, 41 L. Ed. 215. When used restrictively, it may mean, without more, an obligation founded on contract to pay a definite or certain sum of money. There is much nice learning upon the subject, some of it of a historical character, but it need not be reviewed here. It is provided by an act of Congress that a judgment imposing a fine for an offense against the laws of the United States "may be enforced by execution against the property of the defendant in like manner as judgments in civil cases are enforced." Rev. St. § 1041 (3 U. S. Comp. Stat. 1916, § 1705).

[4] We think the provision of the statute is broad enough to embrace those processes and proceedings in aid of or supplemental to an execution that are customary in civil cases. A poor offender may escape a fine by taking the oath of poverty; but we do not think it was the intention to relieve one able to pay because his property is incorporeal or equitable in character, or one who, for the purpose of defeating the judgment, removes his tangibles beyond the reach of an ordinary writ of execution. As employed in the statute, "execution" signifies generally the means for enforcing the judgments of courts in civil cases.

[2] Upon the other question the government contends that the Waters-Pierce Oil Company rendered itself insolvent by the sale of all its property and the distribution of the proceeds among its stockholders, that upon the insolvency of a corporation its property becomes a trust fund for its creditors, and that in the case at bar the proceeds in the hands of the stockholders are substituted for the property and may be followed in a suit to enforce the trust. The Supreme Court has many times declared that the property of an insolvent corporation is held in trust for the benefit of its creditors.

There is some question about the precise nature of the trust and when it arises. It has been said:

"It is rather a trust in the administration of the assets after possession by a court of equity than a trust attaching to the property, as such, for the direct benefit of either creditor or stockholder." Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113.

Again, the trust has been held to arise at the moment of insolvency. McDonald, Receiver, v. Williams, 174 U. S. 397, 404, 19 Sup. Ct. 743, 43 L. Ed. 1022. However this may be, the nearest approach to the case at bar in its facts is Swan Land & Cattle Co. v. Frank, 148 U. S. 603, 13 Sup. Ct. 691, 37 L. Ed. 577. There the plaintiff had an unliquidated claim for damages against three corporations, which sold substantially all their property, distributed the proceeds and remaining assets among their stockholders, and quit business. There was, as here, no contention that otherwise than by the sale and the distribution of proceeds and assets the corporations were or became insolvent. The suit was against a part of the stockholders. The court said:

"The theory of the bill is that the assets of the vendor corporations, which have been distributed to and received by the defendants as stockholders, constitute a trust fund for the payment of all debts and demands against the companies, and may therefore be followed in the hands of, and recovered from, such stockholders, to the extent necessary to discharge valid claims against the corporations from which they were received. The funds sought to be reached are undoubtedly applicable, under proper proceedings against all necessary parties, to the payment, so far as may be needed, of outstanding indebtedness against the corporations which distributed the same; but the difficulty here is that the complainant has not adopted the requisite and necessary procedure to subject said funds thereto. It has no judgment against the corporations by which it was defrauded, nor are such corporations made parties defendant to the suit or brought before the court."

The bill was ordered dismissed without prejudice, because plaintiff's claim had not been reduced to judgment, and the debtor corporations had not been made parties. Neither of the reasons which stood in the way of relief in that case are present in the case at bar. Here the government has a judgment on which execution has been returned unsatisfied, and the Waters-Pierce Oil Company, the judgment debtor, is a party defendant. The case cited seems persuasive, if not decisive, of the liability of the appellants.

The assumption by the vendee company of the debts, liabilities, and obligations of the Waters-Pierce Oil Company does not relieve the stockholders who have received the proceeds of the sale of the assets of their corporation from responsibility to a creditor. Though it may be said that an action against the vendee might be maintained upon the ground of a contract between two persons for the benefit of a third, the remedy is not exclusive in the absence of novation when one of the contracting parties is the primary debtor. The assumption by the vendee company is rather for the assurance and benefit of the Waters-Pierce Oil Company and its stockholders. What we have said of the liability of stockholders in a case like that at bar must not be understood as applying to a case of consolidation of cor-

porations by authority of law, nor to the reorganization of the affairs of an insolvent corporation according to the settled principles of equity.

The decree is affirmed.

WADE, District Judge (dissenting). I cannot concur in the majority opinion, for the reason that, as I view the case, the plaintiff (in the trial court) had an adequate remedy at law, and that resort to the extraordinary remedies here sought in a court of equity cannot be had, in any event, until such legal remedies are exhausted.

If this judgment is a "debt" as held by the majority, it is certainly covered by the express language of the contract by which the Pierce Oil Corporation assumed "all debts, obligations, and liabilities of the Waters-Pierce Oil Company," and the plaintiff could have proceeded in an ordinary suit at law to recover upon such covenant.

It may be true, as stated in the majority opinion that "the assumption by the vendee company of the debts, liabilities, and obligations of the Waters-Pierce Oil Company does not relieve the stockholders, who have received the proceeds of the sale of the assets of their corporation, from responsibility to a creditor"; but the creditor is only interested in getting his money, and, if he can get it by an ordinary law action, he cannot invoke the powers of a court of equity. I can also agree that "the remedy [against vendee] is not exclusive"; but I hold that resort must first be had to the ordinary remedy at law, and that plaintiff can come into equity only when that fails. Not only this, but in equity and in justice the vendee should pay this judgment, if any one does. For a valuable consideration it agreed to pay this judgment (if it is a debt, obligation, or liability), and the stockholders, who received nothing except what they were legally entitled to, should not be held primarily liable.

I agree with the majority that the assets of a corporation constitute in a sense a trust fund, which under certain circumstances may be subjected in the hands of stockholders to the payment of corporate debts. But this is not an action to reach certain "assets" of the corporation; it is an action for a personal judgment against the stockholders. It is not averred that they now have any of the assets, nor is it sought to trace these "trust funds" into anything that defendants now own. So far as the record discloses, these defendants did not have, at the time of the trial, a dollar or a share of stock received at the time of the distribution. Under these circumstances, if liable, why are they liable? Their liability can rest only upon the fact that they are wrongdoers, because by fraud (actual or constructive) they have been parties to the dissipation of the assets of the corporation which the corporation should have first applied to the payment of its obligations.

The plaintiff is in no position to refuse to proceed at law. There are no equities in its favor. The indictment rested untried for six years before the transfer of the property was made. It was not brought to trial for nearly a year after the transfer. It is in no position to appeal for special relief, certainly not against men who, as stockholders of the old and of the new corporations, made specific provision for the payment of all debts, obligations, and liabilities.

Furthermore, the record shows that on February 4, 1916, before this action was commenced on February 18, 1916, the plaintiff had brought suit at law in Louisiana to enforce against the vendee the covenant of assumption to pay all the "debts, obligations, and liabilities of the Waters-Pierce Oil Company," and that such action at law is still pending. I do not hold that this is an absolute election of remedies, but I do hold that, having so elected and proceeded, and it not being claimed that the remedy in that court is not adequate, this court should grant no relief.

If these defendants are liable, such liability is only secondary; if the judgment can be enforced against the Waters-Pierce Oil Company or its vendee, the defendants are not liable at all.