**PEARDON v. CHAPMAN et al.**

No. 9636.

United States Court of Appeals Third Circuit.

Argued June 25, 1948.

Decided Sept. 2, 1948.

As Amended Sept. 20, 1948.

---

Edward J. O'Mara, of Jersey City, N. J. (O'Mara, Conway & Schumann [formerly Wall, Haight, Carey & Hartpence], and Joseph A. Davis, all of Jersey City, N. J., on the brief), for appellant.

Donald B. Kipp, of Newark, N. J., Walter T. Margetts, Jr., of New York City, and Malcolm D. Watson, of New Brunswick, N.J., for appellees.

Before BIGGS, Chief Judge, and McLAUGHLIN and O'CONNELL, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal from an order and judgment dismissing appellant's complaint with prejudice for lack of prosecution.

The action was instituted in December, 1945. Jurisdiction is based on diversity of citizenship. The complaint alleges that appellant and defendants-appellees, Chapman and Laford, are members of a co-partnership, Navigation Instrument Company, under written articles of co-partnership dated May 1, 1942. The purpose of Navigation was the development and promotion of an invention by defendant-appellee Peardon for the detection of torpedoes. Peardon is the former husband of appellant. Originally he assigned one third interest in the detection device to appellant, who in turn agreed to pay him one quarter of her net income from Navigation after taxes. That payment was increased to one half of the income on September 21, 1943. This increase allegedly was obtained from appellant by Peardon through fraud and deceit. Appellant alleges she attacked the agreement for this increase in the Nevada courts and that the decision against her is on appeal. Defendant-appellee, Electric Protective Corporation, is the sales agent for Navigation and is said to be controlled by Chapman and his family.

It is asserted that Electro has not accounted to Navigation for a large number of sales of the device and is withholding upwards of $1,000,000 which it collected as agent for Navigation. Electro is making no adverse claim to at least a large part of this. Chapman is said to have assumed direction of Navigation; to have ousted appellant from participation in its management and to have mismanaged the partnership's affairs, misappropriating Navigation's money for the payment of obligations not due from it, but, if due from anybody, due from Chapman or Electro, or both. Further misappropriation is stated to be threatened. Navigation is alleged to have no peace-time property or business. Electro is stated to be similarly situated and to be an unsafe custodian for Navigation's funds.

Appellant prayed for the dissolution of Navigation and for a receiver for the Navigation fund in possession of Electro, the receiver to disburse the fund to the parties entitled to it as their interests may be determined by "this court upon final judgment herein."

The answer of the defendants-appellees Chapman, Laford and Electro Protective Corporation, denies the controversial allegations of the complaint, except that it states all money due Navigation has been deposited in special accounts maintained in reputable banks and not co-mingled with other funds. The three defendants had a counterclaim alleging expense and time lost by them because of plaintiff's actions in connection with her personal affairs. Chapman had a separate claim for false and malicious accusations against him by appellant. Peardon could not be served. On November 24, 1947, as will hereafter be told, he appeared and filed an answer and counterclaim.

The first court hearing in the matter was January 7, 1946, on the petition of Chapman and Laford to have the court take over what they said was the amount

in dispute. After a long hearing, the court concluded that it had no power to do this and that no purpose would be served by so doing. On the 28th of the same month a motion by plaintiff for partial summary judgment was heard and denied. The court ruled that if plaintiff's allegations that the partnership business was completed were true, then the partnership was already dissolved. Section 31, Uniform Partnership Act. This is the law of New Jersey, R.S. 42:1–31, N.J.S.A. 42:1–31. The court further held that plaintiff could under the partnership articles have dissolved the venture by notice. This point is here urged as error. We find no reason for so treating it.

The court's memorandum deciding the above motion was filed June 24, 1946. Thereafter there was a voluminous second motion for partial summary judgment by the plaintiff. The object of this was to force Chapman and Laford to deposit some $237,207.96 in the partnership account. The cross affidavits take up forty-three pages of the appendix. There was a hearing on this motion January 20, 1947. In the interval considerable time seems to have been spent by accountants for both sides in going over the company books, but at the hearing no agreement could be reached as to the amounts involved, and, in addition, defendants reiterated their uncertainty as to whom to pay. The hearing on the 20th apparently took all day. Regarding the trial situation the court commented that the case was then in a better position to be tried than it had been a year previously, because of word that the defendant Peardon would appear. The court considered Peardon an indispensable party. The motion was denied primarily because of the uncertainty of the figures involved. Our own examination of the record convinces us that this decision was justified. The plaintiff was allowed permission to renew the motion at a continuance of the hearing on February 7, 1947. On that day, after discussion, the denial of the motion was, in effect, affirmed. February 25 was set for the trial, but this was postponed until the 27th.

On February 27 plaintiff's New Jersey trial attorney, who is her attorney of record in the case, was engaged in his second week of a trial in the New Jersey Court of Chancery, and the district court said, "Now since I am convinced he is actually engaged, I can't let the defendants take any technical advantage of that." The court postponed the trial over opposition from defense counsel, who moved for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. This motion was denied. The following colloquy between the Court and counsel for the defendants on the latter's motion to dismiss is informative of the Court's attitude respecting it:

"The Court: Well, you see, Mr. Margetts, you are actually in this position: A dismissal under the rule would hardly withstand attack on appeal * * * and it would engage ourselves in a very futile maneuver. It wouldn't terminate the litigation by any stretch of the imagination; because I am firmly convinced that nothing will terminate this litigation except a trial on the merits. Now there is no sense to our entering a dismissal—and it rests within the discretion of the Court—which will only result in a further litigation for the defendants. In other words, the defendants will gain little or nothing by that type of dismissal.

&ast; &ast; &ast; &ast; &ast; &ast;

"The Court: Oh, they [the plaintiff] could appeal without filing anything. They could take an immediate appeal to the Circuit Court of Appeals.

"Mr. Margetts: Well, we are willing to do that.

"The Court: On the question of abuse of discretion. I mean that wouldn't terminate it. The difficulty with that is sometime along in September, or October, you would probably be arguing the appeal, and in the meantime your clients are still no better off; and assuming that the Circuit decides it within thirty or sixty days thereafter and it should come back, sometime about this time next year you would again be confronted with the trial problem and your clients would be one year delayed, perhaps on a trial on the merits. Now that's actually looking at it from the very practical standpoint. And during all that time their funds would still be practically

tied up, and I suppose about this time next year we would be confronted by the same fact problem that confronts your clients this year. Now the only solution is some definite arrangement by which the trial can be disposed of on its merits, and at the earliest possible date.

"Mr. Margetts: Well, that's what I understood—

"The Court: And I think that with Senator O'Mara here tomorrow morning, we ought to be able to do it; and if the plaintiff then cannot meet the situation by proceeding with the trial of the cause, then we may be in a very proper position to entertain your motion. Now that's actually the situation."

The next morning, with plaintiff's attorney in court, there was a pre-trial conference. This was adjourned to allow counsel an opportunity to "agree on some of these figures." The session was resumed in the afternoon. The pre-trial hearing discussion consumes fifty-three pages of the appendix. The disagreement on the figures was not adjusted. The Court, in an effort to keep the trial to come within reasonable limits, suggested a stipulation of facts, and both sides were agreeable to undertaking it. No definite trial date was set. Thereafter plaintiff's counsel submitted two proposed forms of stipulation, totaling twenty-six pages, to the defense, but they were rejected as was the defense draft of twenty-two pages.

The trial of the case was thereafter fixed for November 24, 1947. On November 21, 1947 the Court and counsel were advised of the illness of plaintiff's attorney. A notice of motion was served on the defense to postpone the litigation because plaintiff's attorney had been advised by counsel for Peardon that the latter would appear in the case and file an answer insisting on one half of plaintiff's distributable share in Navigation described above. It was alleged that the Nevada suit contesting Peardon's right to one half was on appeal, and it was asked that the district court case be continued until a Nevada decision was had, as otherwise plaintiff would be irreparably injured. That motion was denied on the 24th. Putting the trial over to the 25th the Court said, "Tor-orrow

morning at 10 o'clock or I shall dismiss it." The junior associate of plaintiff's attorney, Mr. Davis, then repeated his representation of the 21st as to plaintiff's attorney, saying, "Senator O'Mara is presently at home, is ill and unable to participate in the trial." The Court made it plain that he wanted the New York associate of plaintiff's attorney, "who knows this case," in court in the morning with Mr. Davis ready to try the case. Mr. Davis explained that he himself was unable either by familiarity or experience to try it. At the end of the hearing an appearance was entered for the defendant Peardon by his attorney who filed an answer and counterclaim.

The next day, November 25, 1947, the Court said that the plaintiff must be afforded an opportunity to answer the counterclaim and suggested a delay which would allow plaintiff an opportunity for so doing. Mr. Davis said that Senator O'Mara would be available to try the case the week of December 8th. Then counsel for Peardon moved to withdraw his counterclaim. In response to the Court's query, counsel for Chapman and Laford said they were ready to proceed on their counterclaims. The Court put the case over until the afternoon. At that time Mr. Davis again advised the Court that Senator O'Mara "is still ill and unable to appear today." As to New York counsel, he said that plaintiff insisted Senator O'Mara try the case. The Court indicated that he accepted Mr. Davis' statement regarding his senior's illness.

The trial of the case proceeded in the absence of any representation for the plaintiff. Testimony was presented on behalf of the counterclaims of Chapman and Laford. On motion of the defense, the complaint was dismissed for lack of prosecution. The Court dismissed the first count of the counterclaim as not stating a cause of action and dismissed the second count for failure of proof.

The next step in the litigation was on January 5, 1948 when Mr. Davis moved that the dismissal of the complaint be without prejudice. In support of this he urged that the Court "did at two points in the proceeding indicate that this case would not be dismissed on the merits." The Court said that this was of no moment since the

rule (41b) provided that dismissal is with prejudice unless otherwise specifically stated by the Court.

Two of appellant's three points on appeal have been disposed of in the above discussion. It is urged by appellees that those two points are not properly before us, first because there was no formal order denying the motions. The complete answer to this is that the record shows plainly that they were in effect denied. The second reason suggested is that the appeal is confined solely to the dismissal of the complaint for lack of prosecution. This is again answered by the record. The appeal is from all of the judgment which is against the appellant and which includes her preliminary motions. The only part of the judgment appellant does not appeal is that portion of it which dismissed the counterclaims of Chapman and Laford against her.

■ There remains the final question of the propriety of the dismissal of the complaint with prejudice. Rule 41(b) of the Civil Rules has directly reversed equity's traditional doctrine that a dismissal without consideration of the merits is also without prejudice to the complainant. Swan Land & Cattle Co. v. Frank, 148 U.S. 603, 612, 13 S.Ct. 691, 37 L.Ed. 577. Even so, the terms of dismissal have always been within the discretion of the court. Facer Forged Steel Car Wheel & Locomotive Wheel Co. v. Carnegie Steel Co., 3 Cir., 295 F. 134, certiorari denied 265 U.S. 581, 44 S.Ct. 456, 68 L.Ed. 1190. This continues to be so under Rule 41. 3 Moore's Federal Practice, page 3045. The action of a trial judge in such circumstances is therefore reversible only when an abuse of discretion is shown. Refior v. Lansing Drop Forge Co., 6 Cir., 124 F.2d 440, 444. That rule of discretion would appear to extend to a dismissal with prejudice under the rule. Dauphinee v. American Range Line, Inc., D.C.E.D.Pa., 1 F.R.D. 437.

■ This tiresome litigation was obviously irritating to supervise. Bitter hostility and irradicable differences regarding the amount involved are apparent as between the parties. Despite the persistent efforts of the Court to simplify the matter, both sides continued far apart on the vital issue of what was claimed and what was admitted to be due. But on the actual postponement of trial dates set, the record shows that there were only two delays by the plaintiff-appellant. The first of these occurred when her trial lawyer and attorney of record was caught in an unexpectedly drawn out case in another court. The second was because of the illness of that same attorney. As to this last, on the Court's own suggestion of necessary delay to allow plaintiff to answer the counterclaim against her filed the day before (nearly two years after the suit had been started), Mr. Davis firmly assured the Court that plaintiff's attorney would be available for trial within two weeks. On the occasion of the first postponement the Court had implied that the complaint would not be dismissed with prejudice. He thought at that time that a continuance would be troublesome to the defendants. But this trouble has to be something more than the mere prospect of defending another suit in order to justify a dismissal with prejudice. Olsen v. Muskegon Piston Ring Co., 6 Cir., 117 F.2d 163, 165. Following the expression of opinion by the trial judge the second incident occurred, at which time the Court did not question the representation, made by a reputable member of the bar, of counsel's illness.

It is a reasonable inference, in view of the circumstances of the requested postponement and of the firm commitment to try the case in less than two weeks, that counsel relied upon the attitude of the judge as indicated on the prior occasion. Based on the Court's first expression it would seem that appellant anticipated nothing more drastic than a dismissal without prejudice. With no warning of the Court's uncommunicated change of thought as to dismissal, she was not afforded an opportunity of protecting her cause of action.

Under all the facts, in view of the intimation of dismissal without prejudice and of a situation thereafter arising less blameworthy than in the first instance, the dismissal with prejudice of plaintiff-appellant's cause of action was unwarranted.

So much of the judgment of the District Court as dismisses the complaint in this case with prejudice is reversed.