## GALLUCHAT v. PITTMAN et al.

(District Court, E. D. South Carolina. February 17, 1920. On the Merits, January 10, 1922.)

No. 202.

### On Motion to Remand.

1. **Removal of causes** ☞61—**In joint action, separable controversy must appear from complaint.**

   Where plaintiff has elected to sue defendants as jointly liable, whether or not there is a separable controversy involved must appear from the allegations of fact in the complaint.

2. **Removal of causes** ☞61—**Complaint held not to show joint cause of action.**

   The complaint in a suit in a state court for specific performance of a contract, which alleged that two defendants, who were nonresidents, were owners and in possession of a tract of land, and that the third defendant, who was a resident of the state, "individually" and as agent for his codefendants, executed the contract for sale of the timber on the land to plaintiff, *held* not to show a joint cause of action, the growing timber being part of the realty under the laws of the state.

### On the Merits.

3. **Tender** ☞13(4)—**Draft on individual not legal tender of payment.**

   Tender of a draft on an individual in payment for property under a contract, which the purchaser stated he had verbal authority to draw, *held* not a legal tender.

4. **Specific performance** ☞94—**Reasonable substantial compliance with contract will entitle party to relief.**

   In a suit for specific performance, the rule is not so rigid as at law, and a compliance with the contract will be decreed, where the party seeking to enforce specific performance has in good faith reasonably complied with all matters of substance within the requirements of the contract.

5. **Courts** ☞359—**Suit in federal court involving real estate governed by law of state.**

   Where property rights in real estate are involved in a suit in a federal court, the law of the state controls.

6. **Specific performance** ☞94—**Refusal of complainant to comply with contract held to defeat right.**

   Holder of a contract giving him an option to purchase the standing timber on land *held* not entitled to enforce specific performance, where, as shown by a preponderance of evidence, at a meeting of the parties on the day the option expired he refused to make the payment required unless the fee of the land was also conveyed to him, which he claimed under another contract.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

executors and trustees of the estate of Charles H. Hackley, deceased. On motion to remand to state court and on the merits. Motion to remand denied and decree for defendants.

Decree affirmed, 288 Fed. 928.

B. B. Evans, of Columbia, S. C., John Gary Evans, of Spartanburg, S. C., and G. T. Graham, of Lexington, S. C., for plaintiff.

Logan & Grace and Buist & Buist, all of Charleston, S. C., for defendants.

### On Motion to Remand.

SMITH, District Judge. This matter comes up on a motion to remand. The complaint was filed in the court of common pleas for the county of Williamsburg, apparently some time in June, 1918. Thereafter the defendants Thomas Hume and the Michigan Trust Company appeared specially for the single purpose of filing a petition and bond for removal of the action to this court, upon the ground that there is involved therein a controversy which is wholly between the plaintiff, who is a citizen of the state of South Carolina, and the defendants, the Michigan Trust Company and Thomas Hume, who are citizens of the state of Michigan, which controversy is wholly distinct from the controversy, if any, between the plaintiff and the other defendant named in the complaint, to wit, Robert H. Pittman, and is wholly between citizens of different states, and can be wholly determined as between them without the presence of the said Robert H. Pittman.

Upon the presentation of the petition and bond for removal to the presiding judge of the court of common pleas for the county of Williamsburg, he accepted the same and directed the cause to be removed into this court. A motion is now made to remand, upon the ground that the cause is not a separable one, and that one of the defendants is a citizen of the state of South Carolina, of the same state of which the plaintiff is a citizen.

[1] If the plaintiff has elected to make the action a joint one, and sue the defendants as jointly liable, the question whether or not there is a separable controversy involved is one which must appear upon the face of the complaint. It must appear, from the allegations of fact set up in the complaint and the case therein presented, that such separable controversy between citizens of different states exists.

[2] The complaint in this case alleges that on the 10th of October, 1916, Charles H. Hackley and Thomas Hume, residents of the state of Michigan, were seized and possessed in fee of a tract of land in Williamsburg county, in the state of South Carolina, extending partly into Georgetown county, in the same state, containing 26,000 acres. The complaint further alleges that on the 10th day of October, 1916, the defendant, Robert H. Pittman, individually and acting as the agent of Charles H. Hackley and Thomas Hume, executed an instrument in writing whereby they agreed to sell to the plaintiff all the timber of every kind, suitable for manufacturing purposes at the time of cutting, upon the said 26,000 acres. The plaintiff further alleges in the complaint that the defendants failed to perform their contract of sale, although full tender of the purchase money was made, and the complaint was filed to obtain a specific performance of the contract; or, failing

that, for damages in the sum of $260,000, as allowed by the state practice in the same proceedings.

The complaint has annexed to it the contract of sale upon which the cause of action set up in the complaint is based, and which is attached as an exhibit to and made a part of the complaint, as alleged in the second article thereof. This contract, as annexed to the complaint, purports to be the individual contract of the defendant, Robert H. Pittman, who thereby grants and sells to the plaintiff, M. C. Galluchat, the exclusive option to purchase all the timber of every kind suitable for manufacturing purposes at the time of cutting, upon the 26,000 acres. Although this contract of sale, or rather option of purchase, is signed by Robert H. Pittman alone, yet the complaint alleges that he signed the agreement individually and as agent of Charles H. Hackley and Thomas Hume. Under the allegations of the complaint, it being alleged that Charles H. Hackley and Thomas Hume were the owners of the land, and it being alleged that Robert H. Pittman was acting as their agent in signing this option of sale, it would appear that if Pittman had no interest in the property, there is no doubt that the action, or the controversy in the action, lay entirely between the plaintiff and the defendants who represent Hackley and Hume. For a disclosed principal, whether disclosed at the time or any time anterior to action brought, may and indeed should be sued alone and to the exclusion of the agent. The only allegation in the complaint which would affect this inference is that in the second line of the first article; it is alleged that this agreement was executed by the defendant Robert H. Pittman, individually and acting as the agent of Charles H. Hackley and Thomas Hume.

The position of the plaintiff is that, having alleged that the contract was signed as the individual contract of Pittman, as well as the contract of Hackley and Hume, through his agency, it sufficiently appears upon the face of the complaint that he had the same joint right of action against both Pittman and Hackley and Hume, and, having elected to make the action joint, he should not be deprived of that right. There is no direct allegation at all in the complaint that Robert H. Pittman had any interest either in the land or the timber. According to the allegations of the first article of the complaint, at the date of the contract, Charles H. Hackley and Thomas Hume were the owners in fee and possessed of the land. Under the laws of the state of South Carolina standing timber is a part of the realty, and the presumption would be that the owner of the land in fee was also the owner of the standing timber. Nor is there any allegation in the complaint to contradict this inference, unless it might be inferred to be contradicted by the word "individually" as used in the second article. The contract or option of sale was of the standing timber, and not of the land, and the argument of the plaintiff is that, although the allegations of the complaint were to the effect that Hackley and Hume were the owners of the land, yet inasmuch as the sale was of the timber, and not of the land, and Pittman is alleged to have executed the contract individually, as well as agent, the inference from that should be that he had some interest in the timber which should render him a proper party to the proceeding.

As, nevertheless, the positive allegation is that Hackley and Hume were the owners of the land, and the presumption of law would be that as, being owners of the land, they are also owners of the timber, it would not appear to be sufficient to contradict that presumption that the plaintiff merely alleged that the contract was made by Robert H. Pittman, individually as well as agent. The allegations of fact in the complaint can only support the inference that Robert H. Pittman must have made the contract as attorney for the real owners of the land and timber. If Hackley and Hume were the owners of the land and of the timber, then Robert H. Pittman had no interest whatsoever upon which the contract could operate, and it could only be effectual and binding, so far as Hackley and Hume were concerned, because made by him as their agent. The mere allegation that he made the contract as an individual is refuted by the facts set up in the complaint.

If the complaint had alleged that Robert H. Pittman had any interest in the timber, or if it had in any wise made any allegation from which that inference could be drawn, the conclusion would be otherwise; but upon the face of the complaint, as it is, no proper legal inference can be drawn, except that Hackley and Hume, at the time of the making of this contract, were the owners of the land and the timber, and the only ground or basis for any action against them on the part of the plaintiff would be that they were so. It appears, therefore, upon a careful inspection of the complaint, that there is involved in this cause a controversy of a separable character, wholly between the plaintiff, who is a citizen of the state of South Carolina, and the defendants Thomas Hume and the Michigan Trust Company, who are citizens of the state of Michigan, and that the order of the state court, removing the cause to this court, should not be disturbed.

The motion to remand is accordingly refused.

### On the Merits.

An original complaint was filed in this cause on June 26, 1918, in the court of common pleas for the county of Williamsburg. Thereafter the cause was by the defendants Thomas Hume individually, and Thomas Hume and Michigan Trust Company, as executors and trustees under the will of the estate of Charles H. Hackley, removed from the state court to the United States District Court for the Eastern District of South Carolina, and the transcript of record was filed in this court August 31, 1918. The defendants filed their answers and the cause was at issue for trial when the complainant, M. C. Galluchat, departed this life, and the cause was afterwards, on April 19, 1921, revived and continued, and Minnie M. Galluchat as administratrix of the plaintiff, substituted in lieu and place of the plaintiff.

In the meantime, on February 15, 1921, the Michigan Trust Company, as the sole surviving executor and trustee of the estate of Charles H. Hackley, deceased, and George A. Hume and Thomas H. Hume, as executors and trustees of the estate of Thomas Hume, deceased, filed a bill of complaint in equity in this court against Minnie M. Galluchat, in her own right and as administratrix of M. C. Galluchat, deceased, and others. The issues raised by this last bill of complaint substantial-

ly, with one exception, involve the same issues that were raised by the first bill of complaint brought by M. C. Galluchat. The necessary defendants all answered, and both causes being at issue, ready for hearing, an order of reference was made, under which a large amount of testimony was taken. Thereafter a day was set for hearing, when witnesses not examined before the referee were examined before the court, and after the taking of the testimony the cause was fully heard on argument by counsel for the parties interested.

The original bill of complaint was brought for specific performance, and prayed that the court decree conveyance by the defendants to the plaintiff of the timber upon the tracts of land mentioned in the bill of complaint, or, on failure to make the conveyance, that the plaintiff have judgment against the defendants in the sum of $2,260,000. The original bill of complaint is based upon a recorded agreement alleged to constitute an option granted to Galluchat, for the purchase of the timber on the tracts of land described in the agreement, the conditions of which option are alleged to have been fully performed by the plaintiff, so that he is entitled to have a decree for the specific performance by the defendants of their part of the contract.

The second bill of complaint was brought for the purpose of having the claims of the defendants in the second cause, who succeeded to the rights of the plaintiff in the first cause, especially the defendant Minnie M. Galluchat, adjudicated to be invalid, and that the recorded instrument claimed to be an option, was a cloud upon the title of complainants to the lands, and that the same be canceled and the cloud removed. Both causes were argued together, all the testimony taken being accepted as taken in each cause.

From the testimony it appears that the complainant in the first cause, one Miner C. Galluchat, on the 10th day of October, 1916, received from the defendant R. H. Pittman a deed under seal, whereby Pittman granted to M. C. Galluchat, his heirs, executors, administrators, and assigns, an exclusive option until December 1, 1916, to purchase all of the timber of every kind suitable for manufacturing purposes upon two tracts of land—one of 26,000 acres, situate partly in Williamsburg county and partly in Georgetown county, known as the Hackley and Hume land; and one of 3,000 acres of land, in Berkeley county, separate from the first tract and known as the White and Friant land. Upon due exercise of the option on or before the 1st day of December, 1916, R. H. Pittman was to make and procure to be made to Galluchat, his heirs, executors, administrators, and assigns, a deed of conveyance to the timber upon the land.

The only parties to the original bill of complaint are Robert H. Pittman and the owners and the representatives of the owners of the tract known as the Hackley and Hume tract. The owners of the tract known as the White and Friant tract do not appear to have been specially made parties in any wise to the proceedings; but both tracts are named in the same option deed, the grantor of the option, R. H. Pittman, seems to have acted only under authority from Hackley and Hume, J. D. Lacey, who was the agent of Hackley and Hume, was authorized to deliver the deed of the timber for the White and Friant land, and the

inference is that Hackley and Hume either owned the timber on the tract known as the White and Friant land, or controlled its disposition, so as to execute a transfer thereof, or have one executed, if they desired.

Under the original bill of complaint, the contract sued upon and set up to be enforced is the written contract dated October 10, 1916. No other contract is set up or relied upon. In the pleadings in the second case, of the Michigan Trust Company v. Minnie M. Galluchat and others, and also in the testimony, it would appear that the defendant, Minnie M. Galluchat, relies upon a contract claimed to be contained in some letters and negotiations antecedent to the 10th day of October, 1916; but in the first cause (apart from the legal rule that all antecedent negotiations would be held to be merged in the final written agreement of October 10, 1916) no other agreement is set up or relied upon in the original bill of complaint to be enforced, save that of the written agreement of October 10, 1916.

According to that written agreement, the defendant Robert H. Pittman for a good consideration granted and sold to M. C. Galluchat, as before stated, an exclusive option until December 1, 1916, to purchase all the timber of every kind suitable for manufacturing purposes at the time of cutting upon two tracts of land aggregating some 29,000 acres, for the sum of $575,000 for the timber on the first-named tract of land containing 26,000 acres; and $65,000 for the timber on the second-named tract of land containing 3,000 acres, to be paid one-fourth cash at the time of the exercising of the option, and the balance in five equal successive annual installments, beginning one year from the time of obtaining the deed to the timber sold, and all future payments to be secured by a mortgage on the timber; deferred payments to be evidenced by the notes of the purchaser, bearing 6 per cent. interest, payable semiannually, with certain other detailed covenants for the protection of the mortgagee, which need not be recited for the purposes of this decree. That is the only agreement of which specific performance is sought in the first case.

Some question was made in the pleadings as to the right of Robert H. Pittman to bind the defendants by this deed of option; but upon consideration of the whole testimony the court is of the opinion as a conclusion of fact that Pittman was authorized to bind the defendants in the first cause by the execution of this deed, or, at any rate, that after receiving notice, and with full notice of it, the defendants accepted and ratified it, so that for the purposes of this case they must be considered as having themselves given the option. The option is under seal and for good consideration, and is made in favor of M. C. Galluchat, his heirs, executors, administrators, and assigns.

It also appears from the testimony that Galluchat does not appear to have been a person of much financial resources. He appears to have been personally utterly incapable himself financially of exercising the option and complying with its terms. He stood more in the position of what is generally known as a promoter, who, having obtained an option, desires to secure its performance by some one else, so as to secure to himself some benefit from the transaction. He sought to find some

one who would be willing to "finance" the performance of the contract at a price that would inure to the profit of the promoter. This, however, does not affect his rights. It is an option for good legal consideration to him and his assigns, and what the grantors of the option may be presumed to have intended to gain by it was to secure the services of Galluchat, to whom the option was given, in procuring a purchaser for the grantors of the option at the price mentioned. If Galluchat by himself complied, or through assignment procured some one to comply, with the terms of the option, the defendants were bound to perform.

So, also, to be entitled to the benefit of the option, Galluchat and his assigns (if any) were to be held to an equally strict compliance on their part. The contract was mutual with regard to the obligation of both parties. It appears from the testimony that there was some difficulty about arranging the place at which Galluchat was to comply. He insisted upon compliance in the state of South Carolina, and named November 29, 1916, as the day on which he would be ready to comply. Under the terms of the decision in Shannon v. Freeman, 117 S. C. 480, 109 S. E. 406, rendered by the Supreme Court of South Carolina October 10, 1921, the place of the performance of the contract was to be in South Carolina, and Galluchat was correct in his contention that he could not be required to comply or make a tender without the state of South Carolina.

It does not appear from the testimony that the defendants were very considerate of Galluchat in this matter of fixing a place for his compliance. It may be that they had become convinced that Galluchat was not successful in finding some one to comply, and was wholly unable himself to do so, and they do not appear to have been very ready or eager to afford Galluchat an opportunity to comply by meeting him at any time and place within the state of South Carolina. However that may be, the parties, both Galluchat and the representatives of the defendants, did finally have a meeting for the purpose of compliance by all parties, in the city of Charleston, in the state of South Carolina, on December 1, 1916, the last day upon which, under the terms of the option, Galluchat had a right to comply. At that meeting it does not appear that Galluchat was in any condition financially to comply. Under the written terms of the option, he was to pay $160,000 cash and to give his bond and mortgage for the balance in five deferred payments. He certainly did not tender any notes and mortgage; but that might not be of the essence of the matter, because he could not reasonably be expected to tender the mortgage until the deed of conveyance was exhibited to and accepted by him, so that the terms of the description in the mortgage might conform with the description in the deed of conveyance.

[3] But at that meeting Galluchat was not prepared to comply in any legal sense of the term. He did not have the cash on hand, either in cash or certified check. According to the overwhelming weight of the testimony, all that he had was a certified check on a bank for $25,-000. The name of the bank is not given in the testimony. It was the check of one Sternberg, but presumably it was on a responsible bank. The balance of the $160,000 he only had in a verbal authorization of

Sternberg that he could draw on him for the balance with the deed attached. That is Sternberg's testimony. That is in no sense a legal tender. A draft on an individual, who may or may not pay it, is not in any sense a legal tender; nor is the mere verbal authority to draw a draft, the payment of which depends upon whether or not the drawee is satisfied with the deed, in any way a tender of payment. So far, therefore, as any tender of the $160,000 in cash was requisite to be made by Galluchat, it is found as a conclusion of fact that Galluchat neither made nor tendered, nor was prepared at that interview on December 1, 1916, to make any payment of, the cash required to be paid under the terms of the option held by him.

But the most serious question is as to what was the nature of the tender that really Galluchat offered to make at that meeting. However unreasonable and inconsiderate the defendants may have been in not agreeing to a meeting before that date within the state of South Carolina, to allow Galluchat to comply, yet all parties did actually meet in the state of South Carolina, within the period of the option, viz. on the 1st of December, 1916, and Galluchat does not seem to have made an objection at that date to an inability to comply, because they had not met at a previous date. The date originally fixed by him was the 29th of November, only two days before. Some consideration, reasonable consideration, must be allowed on both sides, and some consideration, therefore, when Galluchat fixed the date of his compliance at so late a date as the 29th of November, must be allowed for the other side to reach the state with their deeds, so as to comply on their part; it being alleged in the complaint that the next day, November 30, was a legal holiday. At any rate, the parties did meet on December 1, without objection, for the purpose of receiving and performing their respective obligations under the contract.

If this were a suit at law for damages, in which a compliance is very strictly required, the failure of Galluchat to comply by tendering the requisite amount of money, no reasonable excuse existing, nor any waiver or postponement having been shown as emanating from the other side, would dispose of his right to recover damages at law. So much, therefore, of the complaint in this case as, under the state practice, might be considered as the foundation for an action at law for damages, would be disposed of by his failure to comply fully with the contract and make his tender.

[4] Looking upon the bill of complaint, however, as a bill for specific performance, the rule in equity is by no means so rigid as that of law, and a compliance with the contract will be ordered where the party seeking to enforce the specific performance has in good faith reasonably complied with all matters of substance, within the requirements of the contract.

[5] This is a matter in which property rights in real estate are concerned, and the law controlling should be that of the state of South Carolina, and the principles as set down as the law of South Carolina are largely contained in the decisions of the Supreme Court of that state, in the case of Dwight v. Parham, 116 S. C. 223, 107 S. E. 908, and also in the case of Shannon v. Freeman, mentioned above. There

does not appear to be any evidence that on the 1st of December, 1916, when the parties met, the defendants repudiated the contract of October 10, 1916, nor does it appear from any of the testimony that, if Galluchat had made tender according to the contract, that would have been unavailing or useless. On the contrary, so far as the testimony shows, the representatives of the defendants having come to South Carolina with deeds and powers authorizing them to complete the contract, and carry it out, it would appear that if a proper tender had been made by Galluchat at that time, it would have been accepted and the matter closed.

[6] A more substantial matter of difference, however, than the amount of money actually tendered by Galluchat, is as to whether Galluchat intended to make tender according to the contract—whether he relied upon the written contract of October 10, 1916. On this there is a conflict of testimony. The testimony for the defense is to the effect that at this meeting Galluchat did not seek or ask or demand the carrying out of the contract of October 10, 1916, which is the basis of the present suit, but, on the contrary, that he claimed the right under some preceding correspondence to be entitled to the conveyance of the fee simple of the land itself, and not the timber alone. The contract of October 10, 1916, is unquestionably for the timber alone, and it was for a conveyance of the timber alone that Galluchat was entitled to demand compliance under that contract.

The testimony for the defendants is to the effect that Galluchat did not require them to comply with any such contract as that of October 10, 1916, which they say they were prepared and ready to comply with, but demanded that they should execute and deliver to him a deed of conveyance of the land in fee simple. If this be correct, then it was not the defendants, but Galluchat, who himself repudiated the contract or agreement of October 10, 1916, and, if so, he would not be entitled to its enforcement, nor would any assignee or representative of his be so entitled.

Galluchat unfortunately is dead. There were six parties present at that interview on December 1, 1916: Robert H. Pittman, the agent of the defendants, who signed the option in question; W. F. Keeney, an attorney and representative of the defendants, who came with a power of attorney from them to execute a deed of conveyance to the timber on the 26,000-acre tract; James D. Lacey, also an agent and representative of the defendants, who came provided with a deed of conveyance to cover the conveyance of the timber on the 3,000-acre tract; M. C. Galluchat himself; Peter Painter, his friend; and Ashby R. Moore.

Peter Painter, Galluchat's friend (who was interested with him also in the securing of the performance of the option), testifies that at the meeting on the 1st of December, 1916, Galluchat made a demand for compliance with the written option of October 10, 1916, which had been recorded, and that the parties representing the defendants said they did not have any deed in compliance with that option; that Galluchat said that he was relying upon the written recorded option, only notifying the others that he would reserve his rights to the fee of the

land, if he had to bring his action in court to assert his rights. The three representatives of the defendant who were at that meeting, Keeney, Lacey, and Pittman, testify to the contrary. Pittman testifies that Galluchat claimed that there were two agreements which were contracts. One was a letter that Pittman had written Galluchat, and upon which he relied, while Keeney and Lacey testify that Galluchat claimed that there were two contracts that Pittman had made with him, that the first was evidenced by a letter written by Pittman, and the other was the option of October 10, 1916, and that Galluchat claimed that 'the first contract contained in the letter was the instrument under which he claimed, and that this contract covered the lands as well as the timber; and that Galluchat insisted that he would not conclude the purchase at all upon the basis of the option of October 10, 1916, nor unless a conveyance was made of the land as well as of the timber.

More important than their testimony on that point is the testimony of Ashby R. Moore, who was the sixth person present, and who was produced as a witness for Minnie M. Galluchat, and who according to his testimony was at the meeting at the request of Galluchat, who asked him to come over and be present and hear what was said. Moore testifies that at the meeting Galluchat claimed that he bought both the timber and the land, and that the parties on the other side refused to accept the check or comply, because Galluchat claimed the timber and the land; that Galluchat, continuously during the whole evening, at the conference, insisted that he was entitled to the land as well as the timber, while the persons representing the vendors contended that the option or contract which Galluchat possessed, called for the sale of the timber alone and not the land; and the difference between the parties was that Galluchat claimed that his contract entitled him to both timber and land, and Keeney and Lacey claimed that the contract entitled him to the timber only, and that all the parties present realized that the contract or option would expire at midnight of the date of December 1, 1916.

If this be correct, and that, after the parties had their meeting, they broke up and separated, not for any unsubstantial point of difference, but upon the very substantial ground that Galluchat claimed to be entitled to a conveyance of the land in fee as well as of the timber, and that the defendants through their representatives declined to give a conveyance of the land, then that was a final termination of the option. Under the option as set up and sued upon in the bill of complaint in this case, Galluchat was entitled to a conveyance only of the timber. If he insisted upon a conveyance of the land, as well as of the timber, and refused to pay his purchase money and comply unless the land was conveyed to him, as well as the timber, then it was Galluchat who repudiated the contract set up in the bill of complaint, and refused to comply with it, and he is not entitled to have any compliance by the defendants with it decreed, at this date.

There are some other circumstances in this suit, which would appear to bear out the testimony of the defendant's witnesses that Galluchat insisted upon a conveyance of the land as well as of the timber. On September 25, 1916, Galluchat executed to his wife, Minnie M. Gallu-

chat, an assignment of all his interest "in, to, and upon the following described premises, to wit: All that tract of timbered lands known as the Hackley and Hume and Lacey lands, containing 26,000 acres," etc.; "also that tract of land known as the Hackley and Hume and Lacey land containing 3,000 acres," etc. This interest so assigned he bases upon the letter written to him by Pittman, dated September 11, 1916, and Galluchat's letter and telegram, dated September 13, 1916.

These communications Galluchat evidently considered and undertook to deal with as constituting an agreement to convey to him both land and timber, wholly independent of the later agreement of October 10, 1916. Also, in a letter of November 20, 1916, from Galluchat to Pittman, he writes to Pittman that it is his intention to comply on November 29, 1916, with the terms of his option of October 10, 1916, without prejudice to his rights under any other agreement, and in a later letter from Galluchat to Pittman, dated November 24, 1916, he again notifies Pittman that, without prejudice to any of his rights under any previous contract, the laws of South Carolina would control as to the place for delivery, and that he demands delivery of the deeds at Kingstree on November 29, 1916. In the same letter he says:

"This letter removes any and all doubt as to the date of compliance on my part, and without prejudice to any rights which I may have under any prior contract I name November 29, A. D. 1916, for the delivery of proper deeds to the two certain tracts of timbered lands in Santee Swamp; i. e., one for 26,000 acres and one for the 3,000 acres, and known as the Hackley and Hume, Purdy, Pittman lands."

And he further declares that—

"all letters and telegrams and correspondence are hereby made a part of this letter."

So, also, in a letter from Galluchat to W. M. Ritter Company, dated December 8, 1916, eight days after the meeting in Charleston, in which he offers to deal with the W. M. Ritter Company for the sale of these Hackley and Hume lands, he states:

"As I stated to you in the beginning, I have a right to convey to you the fee in the land, but in order to accommodate Mr. Lacey to reserve that for Mr. Pittman, which you said would make no difference to you, still, if you desire the fee in what you require for millsite purposes, I will insist upon my right thereto."

So, too, in a letter from Galluchat dated December 7th, six days after the meeting in Charleston, and addressed to Hackley and Hume, he entitled it "In re the Purchase of 29,000 Acres of Land in Santee River Swamp"—not the purchase of the timber on 29,000 acres of land, etc., but "the purchase of 29,000 acres of land"—and notified Hackley and Hume that he was greatly disappointed and surprised that their representatives did not come to South Carolina prepared to close the sale of the property to him. From all this written contemporaneous testimony, it does appear that Galluchat had in mind that he was entitled as of right to a conveyance of the land, as well as of the timber, and that he insisted and continued to insist upon that right.

This lends strong confirmation to the testimony of Keeney, Lacey, and Pittman that he insisted upon that right at the time of the con-

ference in Charleston, and that it was his insistence upon that right which broke up the settlement at that date, and it entirely corroborates the testimony of his own friend, Moore, whom he carried to the meeting himself as a witness, that that also was the ground upon which the conference or meeting broke up, viz. that Galluchat claimed that under the contract he had, he was entitled to a conveyance of the land, and he would not accept the conveyance of the timber only.

As, under the written contract sued on in this case, he was entitled only to a conveyance of the timber, if Galluchat himself is shown to have repudiated that contract and refused compliance on the ground that he was not given a conveyance of the land, as the defendants were not bound to make such conveyance, then at the expiration of the option they were discharged from any further legal or other obligation in the matter.

It is therefore ordered, adjudged, and decreed that the bill of complaint be dismissed for want of equity. The complainant having been permitted to sue in forma pauperis, under the statute in such case provided, no costs will be decreed to be paid to the defendants, but each side will pay its own costs.