## NETTLES v. RHETT et al.

District Court, E. D. South Carolina.
April 25, 1936.

United States. This, because the due process clause of the Constitution (Amendment 14) gives the Supreme Court the right to intervene and prevent any state abusing its power by appealing to such factors rather than to the facts.

However that may be, the law of extradition (removal) is silent on such abuses and almost vociferous in permitting proof of the truth of the charges made. In a society made up of fallible human beings, justice cannot depend on the absolute truth. That remains forever in the soul of the accused. Some one must make the accusation. Some one must pass upon it. Both some ones are part of the administration of the criminal law. A difference between them frees the accused. That difference does not give him a grievance to be compensated for by money or otherwise. If it did, society becomes the victim of its own fairness.

596

R. E. Whiting, of Columbia, S. C., Eugene S. Blease, of Newberry, S. C., and John I. Cosgrove, of Charleston, S. C., for plaintiff.

Mitchell & Horlbeck, Stoney, Crosland & Pritchard, Huger, Wilbur, Miller & Mouzon, Nathans & Sinkler, and Lionel K. Legge, all of Charleston, S. C., for defendants.

MYERS, District Judge.

The plaintiff, Joseph L. Nettles, as authorized receiver of the stockholders' liability of the Peoples State Bank of South Carolina, brought this action in the state court, seeking to enforce stockholders' liability against the stockholders of Peoples Investment Corporation as the true owners of 74,000 shares of the closed bank, issued in the name of said Peoples Investment Corporation. The defendants Bernard M. Baruch and others filed due notice and petition in the state court, and the said

charter. Perhaps that follows in a time when some are unkind to suggest unexpected defects. So the compact clause has been adverted to by many people who have pretty obviously never read it. In the first place, it is referred to as if it contained a grant of power to the states. It contains nothing of the sort, but is a prohibition conditional on the consent of Congress. In the second place, that clause has no application to such matters as extradition, agreements covering wage scales, etc., which some are suggesting its use for. The clause has only been interpreted twice by the courts, by the United States Supreme Court in Virginia v. Tennessee, 148 U. S. 503, 13 S.Ct. 728, 37 L.Ed. 537, and by a lower federal court in Pope v. Blanton (D.C.) 10 F.Supp. 18, at page 22. Both cases declare that the intent of the provision was to require the consent of Congress for such agreements between states as affected the national supremacy and such matters only. So boundary agreements were held the furtherest limit to the constitutional prohibition, and the Supreme Court expressly declared that the states need not go to Congress for permission to "unite in providing means to prevent and repel the invasion of the pestilence without obtaining the consent of Congress, which might not be at the time in session." 148 U.S. 503, at page 518, 13 S.Ct. 728, 734, 37 L.Ed. 537.

So clearly all talk of the constitutional clause being relevant to extradition is nonsense. As a state acts through its Legislature whether it is ratifying a compact or passing a law, it would seem useful for the state Legislatures to get together. In that aspect is the recent crime conference on sound ground? I think not, because there already exists machinery for this legislative get together. This machinery is the uniform law commission with commissioners from each state. These commissioners have already drafted a uniform extradition act and have submitted it to the states as long ago as 1926. In all that intervening eight years, only fourteen states have adopted it, and the commissioners for New Jersey never even took the trouble to have it introduced in our Legislature. I might note that this uniform act refers in its section 15 to what I have tried to indicate is the fallacy of probable cause.

In conclusion I respectfully suggest that the New Jersey crime conference co-operate with this grand jury in drafting an extradition act for introduction in Congress under section 2, cl. 2, of article 4 of the Constitution, or, if they are too proud to do that, that they at least make some effort to obtain the passage in New Jersey of an effective uniform act, but that, in any event, they abandon the cumbersome and unnecessary machinery of an interstate compact.

N. B.—The ruling above referred to has been withheld by the Ethics and Grievance Committee of the American Bar Association on the ground that the appeal to the Circuit Court of Appeals on behalf of the deceased Schultz is still pending and undecided.

cause, having been removed and now duly pending in this court, is before me on plaintiff's motion to remand.

Neither diversity of citizenship nor jurisdictional amount is in question; the sole question being whether, under the cause of action as stated in the complaint, there is a separable controversy or cause of action against the removing defendants which would justify this court in holding jurisdiction.

The plaintiff alleges, first, insolvency of the bank, a $2,000,000 corporation with its principal office in the city of Charleston, with some forty-four branches throughout the state of South Carolina, with insufficiency of the assets to pay in full the claims of its depositors; the authority of the plaintiff as receiver of the stockholders' liability; judgment and nulla bona execution against Peoples Investment Corporation for $740,000, representing the liability on the 74,000 shares of stock in said Peoples State Bank, issued to and standing on the books of the said bank in the name of said Peoples Investment Corporation.

The plaintiff goes on to allege:

"That, as plaintiff is informed and believes, in the year 1929 the said The Peoples State Bank of South Carolina entered upon an extended and expansive program having for its purpose the acquisition and consolidation of a number of smaller banks throughout the State of South Carolina, and that the officers and directors of said Bank, in connection with such program of expansion, organized and had chartered under the laws of the State of South Carolina, on or about March 28, 1929, the above-named Peoples Investment Corporation, with an authorized capital of One Million ($1,000,000.00) Dollars, divided into ten thousand (10,000) shares of the par value of One Hundred ($100.00) Dollars each.

"That, as plaintiff is informed and believes, the purpose and intent of the formation of said Peoples Investment Corporation was that said Peoples Investment Corporation would act as a holding company for the major portion of any stock required to be issued by said bank by reason of its increased capitalization accompanying said expansion program, and, in addition, as an instrumentality for dealing in its shares, therein and thereby securing or attempting to secure for the holders of the stock of said Peoples Investment Corporation freedom from the liability attaching or which would attach to the direct ownership of said bank's stock under the Constitution and statutes of the State of South Carolina.

"That, as Plaintiff is informed and believes, there were associated in the formation and operation of said Peoples Investment Corporation a number of persons, of whom there were at the time of the closing of said The Peoples State Bank of South Carolina, when the liability of the shareholders thereof attached, the defendants hereinabove named who owned the stock of said Peoples Investment Corporation in the amount set opposite their names to wit:

| Name of Stockholder | No. of Shares |
| --- | --- |
| R. G. Rhett | 250 |
| R. G. Rhett, Jr, | 250 |
| A. J. Geer | 150 |
| C. B. Jenkins | 75 |
| J. A. Johnston | 50 |
| K. E. Bristol | 150 |
| E. R. Croft | 30 |
| R. H. Reynolds | 30 |
| F. E. Towles | 75 |
| J. Russell Williams | 50 |
| E. B. Wulbern | 150 |
| F. W. Scheper, Jr. | 90 |
| Montague Timber Corporation | 140 |
| Peoples Securities Company | 4500 |
| R. L. Montague | 10 |
| Albert B. Eastwood | 100 |
| S. W. Childs | 100 |
| Jane C. Childs | 100 |
| Florence Stanton Thompson | 100 |
| Alice S. Coffin | 100 |
| Francis C. Wolcott | 100 |
| John C. Simonds, Jr. | 12 |
| Samuel Want | 10 |
| Edward H. Floyd-Jones | 100 |
| Bernard M. Baruch | 750 |
| Blanche R. Billing | 15 |
| W. H. Cobb & Co. | 200 |
| Carrie C. Cogswell | 10 |
| P. F. Gibson, Jr. | 5 |
| C. F. Prettyman | 3 |
| Margaret A. Rugheimer | 3 |
| Anne E. Montague Stoney | 20 |
| Ann D. Thorn | 100 |
| Jessie McDuff and/or Mrs. McDuff O'Brien | 5 |
| Kane & Company | 200 |

"That the plan and design of said Corporation, as a holding company for the shares of said The Peoples State Bank of South Carolina, is and was contrary to the public policy of the State of South Carolina, is and was unlawful, inequitable and unjust, and, if allowed to stand, will work a great wrong and injustice upon the innocent depositors of said bank, who are represented by plaintiff in this action.

"That in justice and equity the shield and fiction of said corporate device should be set aside and declared by this honorable

598

Court to be null and void and of no effect, and the defendants herein named held liable for the full sum of Seven hundred and forty thousand ($740,000.00) Dollars, which has attached under the Constitution and statutes of the State of South Carolina to the ownership of said bank shares."

The prayer is "that the corporate fiction described as Peoples Investment Corporation be set aside, and that the defendants be declared the true owners of said Seventy-four thousand (74,000) shares of stock of The Peoples State Bank of South Carolina"; and for judgment against said defendants for the sum of $740,000, "representing their ownership of seventy-four thousand (74,000) shares of said defunct The Peoples State Bank of South Carolina."

It is conceded that the constitutional and statutory liability of holders of stock in insolvent state banks arises out of contract, as in the case of stock in national banks.

■■ There should be, this court thinks, a distinction in cases arising out of tort and in cases arising out of contract, in the application of the announced principle that, where plaintiff alleges joint or joint and several liability, the nonresident defendant has no right to say that the action shall be separable, and thus deprive the plaintiff of the right to prosecute his own suit to final determination in his own way in the forum of his choice. Where this principle has been announced, standing alone, as in the admirable review of remand cases by the late Judge Cochran of this district in Lynes v. Standard Oil Co. (1924) 300 F. 812, the action is in tort, alleging joint or joint and several negligence or other actionable conduct against the master and the servant, or coemployees, or employee and officials, one of whom sought federal jurisdiction because of diversity of citizenship. See, also, Price v. Southern Power Co. (D.C.) 206 F. 496; Russell v. Champion Fibre Co. (C.C.A.) 214 F. 963. In such cases, it is the plaintiff's theory and allegation of joint liability that controls, where the facts set out give color to the theory, notwithstanding that on trial there may be failure of proof of joint liability, necessitating election of defendant or defendants to proceed against, or resulting in separate verdicts, as may eventuate. In other words, where a joint liability is alleged in a tort case and joint liability may be established on proof of the essential facts pleaded, plaintiff is entitled to make the issue "in the forum of his choice." It is, however, clearly apparent that, in an action arising out of contract, the plaintiff cannot change the essence of the suit by claiming joint liability where the factual allegations reveal a separable controversy. Judge Cochran recognized the distinction in Branchville Motor Co. v. American Surety Co. et al. (D.C.1928) 27 F.(2d) 631.

■ There is no question here of fraudulent joinder for the purpose of preventing removal as in Sanders v. Atlantic Coast Line Ry. Co. (D.C.) 33 F.(2d) 1010. Nor is there reliance upon specific or separate defenses set up by answer, as in Fidelity Ins., Trust & Safe-Deposit Co. v. Huntington, 117 U.S. 280, 6 S.Ct. 733, 29 L.Ed. 898. It is conceded that no resort to specific or separate defenses could convert an action asserting joint liability into an action of a separable nature.

See Galluchat v. Pittman, 288 F. 917, decided by the late Judge H. A. M. Smith of this district. See, also, Little v. Giles, 118 U.S. 596, 7 S.Ct. 32, 30 L.Ed. 269.

While it is true that the burden is upon the removing defendant to sustain federal jurisdiction (see Carson v. Dunham, 121 U.S. 421, 7 S.Ct. 1030, 30 L.Ed. 992), on motion to remand, plaintiff must nevertheless show that he is entitled on his pleadings to the jurisdiction of the court to which he seeks to have the case remanded. Allegations of joint liability fall unless supported by the nature of the controversy set out. .

"In determining from plaintiff's pleadings whether or not a separable controversy is presented, the court will go to the essence of the suit, without regard to the pleader's conclusions or the form in which he has cast his suit." 54 C.J. p. 295, and note 30.

No greater advantage is afforded plaintiff by the burden upon the removing defendant than is fairly stated in Thurston v. Northwestern Fire & Marine Ins. Co. (D.C.) 9 F.Supp. 848, at page 853:

"The question is not answered by saying that the plaintiff could have brought his cause of action against either defendant separately. Powers v. Chesapeake & Ohio Railway Co., 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673, supra; Lynes v. Standard Oil Co. (D.C.) 300 F. 812, supra.

"The question must be answered by determining whether or not the complaint

on its face, and however imperfectly, alleges a joint liability. If the allegation of facts taken at their face and with every reasonable intendment which may be taken therefrom, states a joint liability, the decision must be for the plaintiff, whatever the nature of the cause or of action. Chesapeake & Ohio R. Co. v. Dixon, 179 U.S. 131, 139, 21 S.Ct. 67, 45 L.Ed. 121, supra; Slate v. Hutcherson, 15 F.(2d) 551 (C.C.A. 4)."

From the many cases cited on this motion by counsel for both sides, no other theory of approach to the preliminary question of separable controversy may be inferred or deduced.

In Hough v. Société Electrique Westinghouse de Russie (D.C.) 232 F. 635, 636, Judge Learned Hand says: "The language in Alabama Great Southern Ry. Co. v. Thompson, supra, 200 U.S. 206 [26 S.Ct. 161, 50 L.Ed. 441, 4 Ann.Cas. 1147], cannot, I think, mean that, where the plaintiff has alleged facts which under the state law would clearly create several obligations which could be separably tried, he may prevent removal by saying that he believes them to create joint obligations. Such a doctrine would make the removal depend upon what theory of law the plaintiff might honestly assert, and would leave the court nothing to do but ascertain how far his legal aberrations might actually carry him. The allegations of the complaint must be the test, but the court must decide whether they create controversies which are separable or inseparable, regardless of plaintiff's belief. Geer v. Mathieson Alkali Works, 190 U.S. 428, 23 S.Ct. 807, 47 L.Ed. 1122."

In the case of Jennings v. Southern Ry. Co. et al., 40 F.(2d) 951, 953, Judge Glenn of this district says: "In construing the pleading we go to the 'essence of the cause of action.' As is so well stated by Judge Woolsey, Southern District of New York, in the case of Genuine Panama Hat Works v. Webb (D.C.) 36 F.(2d) 265, at page 267: 'But recriminatory words sounding in tort, * * * however oft-repeated, cannot change the structural essence of a cause of action. On a motion of this kind, I am entitled to look at the real situation which exists, in spite of allegations by the plaintiff of conclusions which are not supported by the underlying facts as shown in the papers before me. Otherwise the right to remove a case to the United States court would be illusory.'"

In City of Winfield v. Wichita Natural Gas Co. et al. (C.C.A.8th) 267 F. 47, 52, the court says: "It is the controversies, the facts pleaded in the complaint portray, not the legal conclusions the pleader alleges result from those facts, nor his averments of joint liability or joint action, nor his prayer for relief, that determine whether or not the controversies disclosed by the complaint are separable."

The plaintiff's theory and argument is that the instant suit is but a judgment creditor's bill, arising out of the main action brought by plaintiff receiver against all stockholders of the bank, in which action judgment was entered and nulla bona returned on execution against the investment corporation; that this action, therefore, is in effect but an equitable execution. And this position would be supportable were it not for the statutory provision in this state (Code S.C.1932, § 7855), for separate proceedings against one or more or all of the stockholders of the bank, and the view of this court that the complaint states against each of the defendants a separate and fixed liability, which it is the primary purpose of the complaint to enforce against them as the true owners of the stock issued to the holding corporation. In a separate action against the nonresident defendant Baruch, he would have had no defense on a plea of nonjoinder of necessary parties. He alone is liable on his contract, if liability be established, and could not be held to respond to any liability contracted for by any other subscriber to the stock of the investment corporation.

The case of Fidelity Ins., Trust & Safe-Deposit Co. v. Huntington, 117 U.S. 280, 6 S.Ct. 733, 29 L.Ed. 898, supra, upon which plaintiff largely relies, and in which remand was granted, involved the marshaling of liens essential to the conveyance of the property in suit free of liens. In the case at bar, Baruch and other defendants have no conflicting claims, liens, or priorities. The complaint states definite, fixed liability, if any, proportionate to their stated investments, represented by a given number of shares in the holding corporation. The allegation of judgment and of nulla bona execution against the Peoples Investment Corporation shows that there is no res here involved. The action is personal as to each defendant. The relief sought by plaintiff on the equity side of the court to avoid a multiplicity of suits and to conserve and distribute

a common fund is not in conflict with the course of action which might have been followed on the law side of the court against the defendants individually, separately, or collectively, under the South Carolina statute.

■ I find no particular novelty in the cause of action stated in the complaint. Again and again it has been held that "joint adventurers," "partnerships," and owners of stock of holding corporations may be sued, and on proper showing held liable, as the true owners of bank stock issued to trustees, agents, or corporations; and that the corporate fiction will be set aside in the interests of justice, when necessary. Hamilton Ridge Lumber Sales Corporation v. Wilson et al. (C.C.A.) 25 F. (2d) 592; Chisholm v. Gilmer (C.C.A.) 81 F.(2d) 120; Laurent v. Anderson (C.C. A.6th, 1934) 70 F.(2d) 819; Corker v. Soper (C.C.A.5th, 1931) 53 F.(2d) 190; O'Keefe v. Pearson (C.C.A.1st, 1934) 73 F.(2d) 673, 97 A.L.R. 1243. See, also, Peckett v. Wood (C.C.A.N.J.1916) 234 F. 833; Phœnix Safety Inv. Co. v. James, 28 Ariz. 514, 237 P. 958; In re Scrimger's Estate, 188 Cal. 158, 206 P. 65; Bethlehem Steel Co. v. Raymond Concrete Pile Co., 141 Md. 67, 118 A. 279; Tompkins v. Miller, Tompkins & Co., 207 App.Div. 819, 201 N.Y.S. 392, 393; Keating v. Hammerstein, 125 Misc. 334, 209 N.Y.S. 769; Platt v. Bradner Co., 131 Wash. 573, 230 P. 633; Mosher v. Lee, 32 Ariz. 560, 261 P. 35; Midwest Air Filters Pacific v. Finn, 201 Cal. 587, 258 P. 382, 383; Knight v. Burns, 22 Ohio App. 482, 154 N.E. 345; Bryan v. Banks, 98 Cal.App. 748, 277 P. 1075; Louisville & N. R. Co. v. Carter, 226 Ky. 561, 10 S.W.(2d) 1064; Caldwell v. Roach, 44 Wyo. 319, 12 P.(2d) 376; Cross v. Globe-Boss-World Furniture Co., 63 F.(2d) 421 (C.C.A.9th); Chicago, M. & St. P. R. Co. v. Minneapolis Civic & Commerce Ass'n, 247 U.S. 490, 501, 38 S. Ct. 553, 557, 62 L.Ed. 1229; United States v. Milwaukee Refrig. Transit Co. (C.C.) 142 F. 247.

As to "aggregations of persons," see Hamilton Ridge Lumber Sales Corporation v. Wilson et al., supra; Medlin v. Ebenezer Methodist Church, 132 S.C. 498, 129 S.E. 830; Meyer v. Brunson, 104 S.C. 84, 88 S.E. 359.

■ There is novelty here, I find, of considerable interest in the construction and wording of the complaint. The charge is that the Peoples State Bank of South Carolina entered upon an extended and expansive program in 1929, "and that the officers and directors of said Bank, in connection with such program of expansion, organized and had chartered * * * Peoples Investment Corporation." In the following paragraph, it is charged that the purpose and intent of the formation of the investment corporation was that it should act as a holding company for the major portion of any stock required to be issued in furtherance of the expansion program, and as an instrumentality for dealing in its shares, "therein and thereby securing or attempting to secure for the holders of the stock of said Investment Corporation freedom from the liability attaching," etc. Then, in the succeeding paragraph, it is alleged: "There were associated in the formation and operation of said Peoples Investment Corporation a number of persons, of whom there were at the time of the closing of said * * * bank the defendants * * * named; who owned stock of said Investment Corporation in the amounts set opposite their respective names, to wit."

To what extent do the words "associated in the formation and operation" affect the associated statement of limited contractual liability? I am inclined to think they have no effect. The action having a contractual basis, and the limitation of liability being alleged by setting out the amounts of stock in the investment corporation held by each of the defendants, it follows that their participation in "the formation" of the holding corporation could have been only on such individual limitation, and clearly such participation as they may individually have had in the "operation" of the investment corporation was limited by the amount of their respective interests set out.

Were the defendants alleged to be joint conspirators in the perpetration of constructive fraud upon the bank depositors in an effort to deprive them of the security of the stock liability; or, if partnership, or joint adventure, were the basis of the action, the rule would be otherwise, as has been frequently pointed out in stockholders' liability suits. See Chisholm v. Gilmer, supra.

The novelty, then, is rather in the language and construction of the complaint than in the essence of the proceedings. The plea that the veil be pierced and, the corporate fiction destroyed hardly suggests the necessity for the use by the court of, first, a scalpel, and then a bludgeon.

Here is no mystery; no impenetrable maze. The liability with which the persons sought to be held are charged is readily discernible.

In its consideration of the complaint and the essence of the proceedings as thereby disclosed, this court will adopt a just, rather than an unjust, theory. It is inconceivable to the mind of this court that an action against a number of defendants, having as its primary object the adjudication of legal liability against all as the true owners of the stock of a defunct bank which had issued stock to a corporation in which they were shareholders, would subject one defendant, alleged to have made an investment of $300, represented by three shares of stock in the holding corporation, to a demand to respond to a judgment for the entire liability on the stock issued to the corporation, i. e., $740,000—this on the nature of the liability, which is the result of contract, otherwise nonexistent on any theory; certainly not upon any allegation of the complaint, and having no grounds for legal enforcement on any other theory known to the law of South Carolina. The statute (Code S.C.1932, § 7677) prohibiting the holding of bank stock by a corporation provides no penalty. Such holding is merely beyond the corporate power, and therefore ultra vires. It is because of this that stockholders in a corporation may be held to be the true owners in proper cases. It would be manifestly unjust to hold one whose limited assumption of liability as having a contractual basis appears upon the face of the complaint as having contracted to assume the liability as owner of all of the stock issued to the holding corporation. This statement is not to be taken as a conclusion on the merits, but merely in connection with the court's findings as to the essential nature of the proceeding.

The cause of action stated is, in my judgment, that of a limited liability of each defendant, arising from contract, definitely stated, and may be brought separately against each defendant to a conclusion in and with which the defendant separately sued would alone be concerned.

Plaintiff submits that even this conclusion should warrant a remand of the case to the forum of his choice, citing in support:

Miller v. Clifford (C.C.A.1st) 133 F. 880, 5 L.R.A.(N.S.) 49, which appears upon examination to have been decided and remand granted upon the applicable law and decisions of the Colorado courts, where the bank in question operated. In Terry v. Little, 101 U.S. 216, 25 L.Ed. 864, cited in the Miller Case, the opinion is based upon the charter of the bank in question, and upon the approved existing mode of enforcing liability, to wit, suit in equity by or for all creditors.

Fidelity Ins., Trust & Safe-Deposit Co. v. Huntington, supra, already referred to, is in no way controlling here.

Graves v. Corbin, 132 U.S. 571, 10 S. St. 196, 33 L.Ed. 462, presented a much more involved situation. This case was remanded after trial in the circuit court (Corbin v. Boies, 34 F. 692), on the ground that a determination of all issues against all of the defendants was necessary before distribution of partnership assets involved; hence that there was no separable controversy.

The decisions in Campbell et al. v. Milliken et al. (C.C.Colo.1902) 119 F. 981, Id. (C.C.) 119 F. 982, appear to have been based upon questions which do not arise in the instant case.

On the other hand, several interesting cases cited in support of federal jurisdiction bear directly on the point involved.

In Calderhead v. Downing (C.C.Wash. 1900) 103 F. 27, at page 29, the court said: "The liability of each stockholder in an insolvent corporation is so far distinct and several that in any form of proceeding, whether against all in one suit or by separate proceedings against each, it is necessary for the court to render judgment against each for a specific amount, and the judgment against each stockholder can only be enforced by a separate execution. Therefore it is plain that the case involves a separable controversy between the defendants Hammond & Bailey and the plaintiff, which can be fully and finally determined without in any way affecting the rights of other defendants. The separable controversy does not arise from any separate or independent defense pleaded by these defendants, but it appears by the bill of complaint that the case is one which can be divided into parts; in other words, there is a separate and distinct cause of action stated against each of the stockholders, which might be the subject of a separate and independent action, and the case is removable by these petitioners

under the provisions of the removal statute."

The same principle is announced in Wright v. Ankeny (D.C.Wash.1914) 217 F. 985, and in Des Moines Elevator & Grain Co. v. Underwriters' Grain Association (C.C.A.8th, 1933) 63 F.(2d) 103, 106, Judge Sanborn says:

"Where there exists in any suit a separate and distinct cause of action on which a separate and distinct suit might properly have been brought, and complete relief afforded as to such cause of action, there is a separable controversy. [Citing numerous cases.] * * *

"The fact that, under the state statute, the plaintiff had the right to combine the causes of action in a single suit could not affect the right granted to the defendants by the laws of the United States to remove the controversy to the federal court."

I have been unable to find any effective modification of the rule as stated by Mr. Justice Harlan in Barney v. Latham, 103 U.S. 205, 26 L.Ed. 514, that, where a case presents a separate controversy between plaintiff and several defendants, petitioning for removal, with which controversy another defendant, a citizen of the same state with one of the plaintiffs, had no necessary connection, and which controversy could be fully determined as between the parties actually interested in it, without the presence as a party in the cause of such other defendant, not only could there be a removal, but the removal carried with it into the federal court all the controversies in the suit between all parties to it. See phrasing of references to above in Miller v. Clifford, supra.

To deny the removing defendants the jurisdiction of this court would be to disregard the applicable provision of the removal statute (title 28, § 71, p. 3, U.S.C. A.): "And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court of the United States for the proper district."

It is therefore ordered that the motion to remand be, and the same is hereby, denied.