## UNITED STATES v. CAPPS MFG. CO.

(District Court, N. D. Georgia. September 9, 1925.)

No. 347.

1. **Internal revenue** ⊕⊃28—**Action by United States for taxes may be brought within five years after return.**

In view of Revenue Act 1921, § 250(d) being Comp. St. Ann. Supp. 1923, § 6336⅛tt, superseding Revenue Act 1918, § 250(d), being Comp. St. Ann. Supp. 1919, § 6336⅛tt, a suit by the United States for recovery of income taxes under the earlier act may be brought at any time within five years from filing of taxpayer's return.

2. **Constitutional law** ⊕⊃107—**Congress may change statutes of limitation which affect only remedy.**

The matter of limitation of actions affects only the remedy, and Congress has power to change at any time statute prescribing limitations for recovery of unpaid income taxes.

3. **Internal revenue** ⊕⊃7—**Corporation taking over entire assets of other corporation held liable to pay its taxes.**

A corporation which took over the entire assets of another corporation, which exceeded liabilities of latter by an amount more than ample to pay income taxes due the United States, *held* liable in equity for such income taxes.

4. **Internal revenue** ⊕⊃25—**Assessment presumptively correct.**

An assessment of income taxes is presumptively correct.

5. **Internal revenue** ⊕⊃28—**Evidence of witness as to deductible expenses not sufficient, where witness without first-hand knowledge.**

In action by the United States to recover unpaid corporate income taxes, testimony that entire expenses of corporation, which took over assets of another corporation, should be chargeable against income of latter, *held* insufficient, where given by witness without first-hand knowledge.

In Equity. Action by the United States against the Capps Manufacturing Company. Findings and decree for the United States, with leave to defendant to present supplemental proof.

C. P. Goree, Asst. U. S. Atty., of Atlanta, Ga.

Charters & Wheeler, of Gainesville, Ga., for defendant.

SIBLEY, District Judge. [1, 2] 1. The plea of statute of limitations must be overruled. It is founded upon section 250 (d) of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6336⅛tt). This, however, was superseded by section 250 (d) of the Revenue Act of 1921 (Comp. St. Ann. Supp. 1923, § 6336⅛tt), which makes the bar to occur only by a lapse of five years from the date the return is filed; no limitation, apparently, being provided unless a return is actually filed. Though the tax liability sought to be asserted here arose under the Revenue Act of 1918, the matter of limitation affects only the remedy, and could be, as it has been, altered by Congress. This suit was instituted within five years from the filing of the return by Capps Manufacturing Company, the only return filed, and so in time.

[3] 2. The tax liability asserted is really one against Capps Cotton Mills for income tax from January 1, 1918, to June 18, 1918, which is sought to be collected from Capps Manufacturing Company on the ground that the latter corporation, when organized on June 18, 1918, and being the sole stockholder of Capps Cotton Mill, took over, as such stockholder, on that date, all the assets of the latter corporation, without provision for the payment of this tax debt, and so became liable for it to the extent of the assets so taken.

I find that Capps Cotton Mill was, pri-

or to 1918, a corporation which owed large debts to the First National Bank of Toccoa, secured by a pledge by stockholders of all save 15 shares of the capital stock of Capps Cotton Mill. The bank was in the hands of one Wilson, as receiver, who, under decree of this court, sold all the assets of said bank, including said debts and stock of Capps Cotton Mill, to H. H. Dean and others as trustees, who, under a written agreement, were to raise from the assets purchased sufficient funds to pay the purchase price for them, and were then to turn the residue over to a corporation to be organized, as payment for its capital stock, which was to be issued to the stockholders of the defunct bank in proportion to their stockholdings therein. By virtue of the control of the stock, Capps Cotton Mill was operated first by the receiver of the bank, and then, during 1918, by the said purchasing trustees; one Dance being elected as its president, and being the actual manager of the manufacturing business. All through the year 1918 this business was conducted in the name of the Capps Cotton Mill and its separate books continued. Its net profits were paid out as dividends to the trustees, the holders of the stock, and by them applied to the payment of the purchase price of the bank's assets. Dance, the owner of the 15 shares of cotton mill stock outstanding, was settled with and his stock eliminated.

The new corporation, named Capps Manufacturing Company, was organized on June 18, 1918, but the control of Capps Cotton Mill and all the other purchased assets was not actually turned over to it by the trustees until January, 1919, after the purchase money had been all paid. No conveyance by Capps Cotton Mill of its physical assets, in settlement of the debts and stock held by the trustees and Capps Manufacturing Company, was ever made, nor was any corporate action taken by it in the matter. Its assets were informally taken charge of by Capps Manufacturing Company and the corporate activity of Capps Cotton Mill dropped after January 1, 1919. The value of the assets so taken December 31, 1918, exceeded the debts of Capps Cotton Mill, including the tax liability now asserted. This appears from the income tax return of Capps Manufacturing Company, Sheet 16, entitled "Consolidated Balance Sheet for December 31, 1918," where the net assets of Capps Cotton Mill, less depreciation, are put at $92,540, and liabilities, exclusive of capital stock and undivided profits, at $53,283.67, after elimination of a debt

of $43,034 said to be due to the cotton mill by Capps Manufacturing Company. The margin of value is thus ample to cover this tax claim. Under these facts I think the Capps Manufacturing Company may be held liable in equity for such tax as should be paid by Capps Cotton Mill.

The operations of Capps Cotton Mill were, as stated, kept for the year 1918 on its separate books, and the results fairly stated in the income tax return made by Capps Manufacturing Company in 1919 for its 1918 business. The cotton mill was profitable, but losses were sustained by Capps Manufacturing Company in other departments of its business almost sufficient to offset the profits. The return made deducts this loss and tenders payment of tax on the difference only. The United States has assessed the proportion of profit earned by the cotton mill prior to June 18, 1918, to it as a separate corporation, and seeks to recover, in equity, from Capps Manufacturing Company, as recipient of the corporate assets as aforesaid.

On the facts stated I conclude that during 1918, while the trustees and those they represented were the owners and beneficiaries of the business conducted by Capps Cotton Mill, it was only by virtue of their control of the vast majority of the capital stock. The corporation was still a going concern, though loosely conducted. If employees had been injured, their claims would have been against the corporation, and not its stockholders. If the business had failed, the creditors could have proceeded only against the corporation and its separate assets. Having thus taken advantage of corporate organization, such burdens as separate corporate taxation must be borne by the stockholders. No reason appears why its stockholders should be allowed to confuse this corporate income with their other affairs, any more than other stockholders may. Even after June 18, 1918, when Capps Manufacturing Company settled for the outstanding 15 shares of stock and became the sole stockholder, the legal separateness of the two was unaffected.

[4] The United States has given the benefit of grave doubt against itself in making separate assessment only up to that date. A prorate of the annual profit as shown by the return was assessed for this period. No other or fairer basis appears in the evidence. The assessment thus made against Capps Cotton Mill is not shown to be incorrect, (and the presumption is in its favor), unless insufficient expenses have been deduct-

ed. The return sheet A–11 makes a separation of general expenses between Capps Cotton Mill and Capps Manufacturing Company; $15,358 being attributed to the latter, and $2,821.37 to the former.

[5] By amendment of the answer all these items are averred to be chargeable to the cotton mill, and there is general testimony to that effect. It is, however, not from a witness who knew it first-hand, and is not satisfactory. It does seem, though, that some of the expenses, such as office salaries, charged only to Capps Manufacturing Company, ought to be apportioned. The attorney's fees, by far the largest item, seem not to have been occasioned at all by the separate business of the Cotton Mill and are properly charged to the other company.

If defendant can supplement its proof as to the proper incidence of the items of expense on sheet A–11, it has leave to do so by September 20, 1925. In default thereof, a decree may be taken on these findings for the amount sued for.