**DREYFUSS DRY GOODS CO. v. LINES, Collector of Internal Revenue.**

District Court, E. D. Louisiana. April 1, 1927.

No. 18289.

1. **Internal revenue ☞38(2)—Plea of limitation as to assessment of back profit and income taxes, not submitted to Commissioner, cannot be considered (Revenue Act 1921, § 250d [Comp. St. § 6336⅛tt]; Comp. St. §§ 1672-1674, 5945, 5949, 5951).**

In action against collector of internal revenue to recover back profit and income taxes, plea of five-year limitation of Revenue Act of 1921, § 250d (Comp. St. § 6336⅛tt), providing for assessment within five years after return is filed, which was not submitted to Commissioner of Internal Revenue, cannot be considered, in view of Rev. St. §§ 3221, 3226, 3228 (Comp. St. §§ 5945, 5949, 5951), re-enacting sections 1011, 1012, 1014 (§§ 1672-1674).

2. **Internal revenue ☞25, 28(1)—Commissioner of Internal Revenue, as tax-collecting agent, must proceed by precise method prescribed by statute.**

Commissioner of Internal Revenue, as agent of government for collecting profit and income taxes, has no authority to proceed otherwise than by precise method prescribed by statute for assessment and collections.

3. **Internal revenue ☞25—Assessment of corporation's profit and income taxes against partnership which acknowledged it was corporation's successor held justified (Revenue Act 1926, § 280).**

Assessment of corporation's profit and income taxes against partnership which took over corporation's business when it surrendered charter *held* justified, in view of partnership's correspondence with Commissioner of Internal Revenue acknowledging it was corporation's successor, and its payment of corporation's tax under voluntary final return, notwithstanding that Revenue Act 1926, § 280 (44 Stat. 61), first authorized assessments directly against transferees.

4. **Internal revenue ☞27(2)—Under trust fund doctrine, partners and partnership succeeding corporation are liable for payment of corporation's profit and income taxes to extent of assets transferred.**

Under trust fund doctrine, both individual partners and partnership, which was successor to corporation, became liable as matter of law for payment of profit and income taxes due by defunct corporation, to extent of assets transferred.

5. **Estoppel ☞110—Equity must consider conduct of parties, even though estoppel is not specially pleaded.**

Court of equity is bound to consider conduct of parties seeking equitable relief, even though estoppel be not specially pleaded.

Petition by the Dreyfuss Dry Goods Company against D. Arthur Lines, Collector of Internal Revenue. Decree entered dismissing plaintiff's suit.

S. L. Herold, of Thigpen, Herold, Lee & Cousin, of Shreveport, La., for plaintiff.

Frank J. Ready, Jr., Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., and T. M. Logan Bruns, Asst. U. S. Atty., of New Orleans, La., for defendant.

BURNS, District Judge. Petitioner, Dreyfuss Dry Goods Company, is a commercial partnership of Shreveport, La., composed of Samuel Dreyfuss and Jacob G. Levy. These partners had theretofore been the principal stockholders of Dreyfuss Dry Goods Company, Limited, a corporation which had been chartered in 1901, and dissolved by the surrender of the charter on February 28, 1919, when the partnership was formed and took over all of the business and assets of the

corporation, with which they continued the business as a going concern.

The petition alleges that the defendant collector of internal revenue is indebted to them in the sum of $19,321.84, because of his collection of certain profit and income taxes, made illegally under an assessment for the year 1918; that the said assessment was illegal because the partnership was not in existence during that year, and therefore the assessment in the name of the partnership instead of in the name of the corporation was void.

The collector answers that the copartnership, by taking over all of the assets of the dissolved corporation, thereby constituted same a trust fund, and became liable for the taxes assessed against the corporation for the year 1918; that the plaintiff partners had filed a tentative return in the name of the corporation for the year 1918 on March 18, 1919, though it was then dissolved, and thereafter, on May 23, 1919, filed a complete return in the partnership name, covering the income and profit taxes of the dissolved corporation for the year 1918, and paid the amount shown to be due thereby; that thereafter the Commissioner of Internal Revenue found this return to be misleading, incorrect, and false in certain particulars, and thereupon made the additional assessment for the additional taxes due for the year 1918.

[1] By supplemental petition the plaintiff also pleads the limitation of five years under section 250(d) of the Revenue Act of 1921 (Comp. St. § 6336⅛tt), which provides that assessment should be made and determined within five years after the return was filed and that no suit or proceedings should be begun after the expiration of five years after the date when such return was filed.

From the claim for refund, which was dated May 29, 1925, it appears that this issue was not presented to the Commissioner of Internal Revenue. In substance that document recited that the corporation was originally chartered in 1901; that it filed a corporation income and profit tax return for the year 1918; that on February 28, 1919, it surrendered its charter, all of its assets having been turned over to its stockholders, who, in turn, formed a partnership; that in 1923 the defunct corporation's records for the year 1918 were examined by revenue agents, as a result of which the assessment was made against the partnership and not against the corporation; that a protest was filed and a claim for abatement made, which, on appeal, was denied by the Commissioner; that the partnership was thereby compelled to pay the tax to avoid distraint of its assets; that the partnership, which was not in existence during the year 1918, could not be taxed for that year, particularly since the Revenue Act of 1917 (40 Stat. 300) did not put a tax upon partnerships as such; that the assessment was made in the name Dreyfuss Dry Goods Company, instead of Dreyfuss Dry Goods Company, Limited.

There was no objection or plea submitted to the Commissioner that the statutory limitation had run.

In Red Wing Malting Co. v. Willcuts, 15 F.(2d) 626 (8th C. C. A.) Circuit Judge Kenyon said, inter alia, that the application for refund must state the precise ground upon which the refund is demanded, and, "if that is not done, a party cannot base a recovery in the court upon an entirely different and distinct ground from that presented to the Commissioner." The same doctrine was applied by the Supreme Court in Rock Island R. R. Co. v. U. S., 254 U. S. 141, 41 S. Ct. 55, 66 L. Ed. 188: "Men must turn square corners when they deal with the government. If it attaches even purely formal conditions to its consent to be sued, those conditions must be complied with. * * *"

Accordingly, in view of sections 3221, 3226, 3228, re-enacting sections 1011, 1012, and 1014 of the Revised Statutes (Comp. St. §§ 5945, 5949, 5951, 1672–1674), which prescribe the formal conditions upon which suits for a refund may be maintained in the courts, it must follow that the issue raised by the supplemental petition cannot be considered here.

The main issue turns upon the validity of the assessment. The plaintiff admits that the tax was due; that, if the defendant had reduced the same to a judgment by a suit at law against the corporation, then the copartnership would have been answerable to a decree in a suit in equity to enforce the collection, under the trust fund doctrine, out of the assets in the hands of that transferee and amply sufficient to pay the tax, which was admittedly due upon the income and profits of the corporation; that the Internal Revenue Service, being unwilling to pursue the remedy prescribed by law, usurped an authority not sanctioned by law, when it made the assessment against the partnership instead of against the corporation; that prior to the Revenue Act of 1926 (44 Stat. 9), section 280 of which for the first time authorizes the Commissioner to make assessments directly against the transferees, the Commissioner had no authority to enforce the trust fund doctrine except after judgment liquidating the claim, and by a suit in equity, citing U. S. v. Merriam, 263 U. S. 179, 187, 44 S. Ct. 69, 71, 68 L. Ed. 240, 244,

29 A. L. R. 1547, to the effect that in statutes levying taxes the literal meaning of the words employed is most important, for such statutes are not to be extended by implication. If the words are doubtful, the doubt must be resolved in favor of the taxpayer. The same rule of construction was applied in Gould v. Gould, 245 U. S. 153, 38 S. Ct. 53, 62 L. Ed. 211. Both of these cases involved the interpretation or definition of mere words; the word "bequest" in the one and the word "alimony" in the other.

[2, 3] In this case there is called in question the authority or power of the Commissioner of Internal Revenue, as a tax-collecting agent of the government, to proceed otherwise than by the precise method prescribed by the statute, and therefore the same principle undoubtedly applies. The Commissioner, as an administrative officer, must turn square corners in the exercise of his authority no less than the citizen must, in availing himself of the sovereign's consent to be sued. He cannot deviate from the method of assessment and collections prescribed by the statutes. It appears from the record, however, that the Commissioner's action was compelled by circumstances wholly within the control of the taxpayer, and by its acts. The assessment was not made by mistake or error, though such error might have resulted from the mere omission of the abbreviation "Ltd.," which is all that distinguishes the name of the partnership from that of its predecessor corporation. The plain fact was that the corporation was no longer in existence after February 28, 1919. Among the documents filed, there was a "Tentative Return and Estimate of Corporation Income and Profits Taxes," dated March 13, 1919, for the year.1918. It was filed in the name "Dreyfuss Dry Goods Company, Ltd." We should bear in mind that, when the charter had been theretofore surrendered, on February 28, 1919, the business was taken over as a going concern by the stockholders, who formed the new partnership. On May 23, 1919, the "Corporation Income and Profit Tax Return" for that year was filed in the name "Dreyfuss Dry Goods Company," omitting the.affixed abbreviation "Ltd.," which was the distinguishing mark of the corporate name. On March 8, 1920, a "Corporation Income and Profit Tax Return" for the period January 1, 1919, to February 28, 1919, the date of dissolution, was filed likewise in the name "Dreyfuss Dry Goods Company," omitting the abbreviation "Ltd." from the name. The contemporary correspondence which followed shows that all letters were addressed by the Commissioner to "Dreyfuss Dry Goods Company," and those sent the Commissioner were so signed.

On May 8, 1924, Samuel Dreyfuss and J. G. Levy filed a power of attorney naming one J. B. McGuire, of "Winston & McGuire, Inc., Federal Tax Advisors," as their attorney in fact to appear before the Internal Revenue Bureau, Washington, D. C., in their behalf as the principal stockholders of the defunct corporation "since liquidating" and as the copartners in "Dreyfuss Dry Goods Company" on income tax matters for the years 1918 and 1919. From this it appears clearly that both the plaintiff and the Commissioner were treating the subject-matter throughout as a transaction between the government and the partnership as successor to the corporation.

It was not until May 28, 1925, when the "Claim for Refund" was filed, that the partnership questioned the validity of the assessment on the ground that the tax bill was rendered against "Dreyfuss Dry Goods Company," the partnership, and not against "Dreyfuss Dry Goods Company, Limited." Throughout their correspondence the two copartners freely admitted to the Commissioner that the business being conducted by them "is the same business they took over from the Dreyfuss Dry Goods Company, Limited, a corporation, * * * of which they were the principal stockholders when it was dissolved." They had paid the 1918 tax shown to be due by the defunct corporation under their voluntary final return, in the name of the partnership, for the year 1918, and admitted thereby their liability for the payment of the tax then appearing to be due. Their obligation to pay the tax was complete.

Among the documents in the record there is the balance sheet of December 31, 1918, showing the corporation's net worth at the close of 1918 as being $199,748.74. The final *"Corporation* Income and Profits Tax Return" filed by the Dreyfuss Dry Goods Company (partnership) on March 17, 1920, for the period January 1 to February 28, 1919, the time of dissolution, included that balance sheet as of December 31, 1918, and a letter explaining that no closing balance sheet could be furnished as of February 29, 1919, because "our books were not closed on February 28, 1919, when the corporate charter was surrendered. * * * We do not have on file a trial balance as of that date. * * * Our return for the period ended that date is based on average profits for the taxable period, applied to sales for the period under question, against which profit we applied the actual expenses as

reflected by the books." In schedule B of the same return it appeared that the partnership's invested capital corresponded exactly with the net worth of the assets transferred from the corporation at its dissolution, and voluntarily received by these partners as transferees.

[4] Under the trust fund doctrine, both the individual partners and the partnership became liable, as a matter of law, for the payment of taxes due by the defunct corporation to the extent of the assets transferred to themselves. When this dissolution and transfer took place, they received and took over approximately $160,000 without paying the approximate $19,000 due the government, which they were bound in law, equity, and good conscience to pay.

The payment, however, was made under protest, upon the collector's demand, after a claim for abatement and appeal to the Commissioner had been denied. This, they say, was done in order to prevent the closing of the business under a warrant of distraint. It is curious that the record does not contain evidence of a seizure by distraint, and important to remember that, if such distraint did issue, and the partnership did then believe that the assessment had been made against them illegally for the tax due by another or distinct entity, a "third person," such seizure and levy by distraint could readily have been interrupted by the judicial remedy of injunction.

Plaintiffs chose the more devious course leading to this suit upon the theory that the Commissioner of Internal Revenue was bound to reduce his claim to judgment, which, under the circumstances here presented, is tantamount to saying he was bound to assess and sue the defunct corporation, which suit was rendered impossible by their own acts. Why should the Commissioner have been required to make an assessment and file a suit against a corporation which he knew to be nonexistent, whose officers were functis juris, and who were advising him of their new status and acknowledging their liability in a series of documents and letters during the two or more years following the dissolution and preceding the assessment, in course of which the plaintiffs had themselves abandoned the use of the corporate name and substituted the firm name and title of their copartnership. They formally acknowledged themselves to be direct successors and transferees of the defunct corporation, in possession of all its assets, which they continued in operation as a going concern. By so doing they acknowledged these assets to be a trust fund quoad the cred-

itors of the corporation, for which the partnership and themselves, individually and directly, were liable. R. R. Co. v. Howard, 7 Wall. 393, 409, 410, 19 L. Ed. 117; U. S. v. Capps Mfg. Co. (D. C.) 9 F.(2d) 79, affirmed (C. C. A.) 15 F.(2d) 528.

[5] Upon a full consideration of the whole record, I am persuaded that the Commissioner's failure to assess and attempt collection of the tax in the manner contended for by the plaintiff was fully justified. The original taxpayer was no longer in existence. He could not have sued the defunct corporation had he so desired. Swan Land & Cattle Co. v. Frank, 148 U. S. 603, 13 S. Ct. 691, 37 L. Ed. 577. If he had actually issued a distraint, the plaintiff had available its judicial remedy by injunction proceedings in which the legality of the assessment could have been tested. An original suit in equity against the plaintiff, in the absence of a prior judgment at law, would have been a vain gesture. A court of equity is bound to consider the conduct of parties seeking equitable relief, even though estoppel be not specially pleaded. The Commissioner's proceeding cannot be designated as such an irregularity as would affect the legality of the collection. It was irregular only to the extent made necessary by the conduct of the plaintiff, and not such as would strike the collection of the tax with nullity, because the tax was admitted to be due out of the trust funds actually in their hands. Decision 2062, on the appeals of H. F. Kerr and A. E. Clegg, docket Nos. 1973, 1975, of the U. S. Board of Tax Appeals, 5 U. S. B. T. A. 1073.

Accordingly, a decree may be entered dismissing plaintiff's suit at its cost.